### JOHNSTON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 2, 1923.)

No. 175.

1. **Internal revenue ☞27(2)—Corporation holding state license to conduct boxing exhibitions liable for internal revenue tax on tickets sold.**

Under a New York statute (Laws 1920, c. 912) authorizing the state boxing commission to grant licenses to corporations only, one contracting with an incorporated club holding such a license to conduct boxing exhibitions to act as its agent and manager of such exhibitions is not responsible for the tax imposed on tickets by Revenue Act 1918, §§ 800, 802 (Comp. St. Ann. Supp. 1919, §§ 6309⅘a, 6309⅘c), though he sells and collects for the tickets and has a vested interest in the proceeds, but liability for the tax rests on the licensed club.

2. **Embezzlement ☞8—Failure to make return and pay over tax imposed on sale of entertainment tickets not embezzlement of money of United States.**

Money received for tickets at the box office of a theater or other place of entertainment, though the owner of the enterprise is required to make returns and pay over the tax on the proceeds of the tickets by Revenue Act 1918, §§ 800, 802 (Comp. St. Ann. Supp. 1919, §§ 6309⅘a, 6309⅘c), is not money of the United States, and failure to make such return and payment does not constitute embezzlement under Criminal Code, § 47 (Comp. St. § 10214).

3. **Internal revenue ☞4—Treasury regulations have force of law.**

Treasury decisions, such as are regulations of the department, addressed to and reasonably adapted to enforcement of internal revenue laws, have the force and effect of law, if not in conflict with express statutory provisions.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against James J. Johnston. Judgment of conviction, and defendant brings error. Reversed.

· Defendant was charged, in eight counts in an indictment, with a violation of sections 800, 802, and 1308b of the Internal Revenue Law (40 Stat. 1057, 1120, 1143 [Comp. St. Ann. Supp. 1919, §§ 6309⅝a, 6309⅝c, 6371½h]), and in four counts in said indictment he is charged with the crime of embezzlement under section 47 of the Criminal Code (Comp. St. § 10214).

George E. Coughlin and Arthur N. Sager, both of New York City, for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Peter J. McCoy, Jr., and John E. Joyce, both of New York City, Asst. U. S. Attys., of counsel), for the United States.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The Central Manhattan Boxing Club, Inc., is a New York corporation. It entered into an agreement on November 26, 1920, the material parts of which were that the plaintiff in error, desiring to exclusively conduct boxing matches as the "agent, matchmaker, and manager of the Manhattan Athletic Club under the charter and license held by it for the period of one year," agreed to pay the club $750 a month, except for the months of July and August, "for the aforesaid exclusive arrangement." He agreed to hold at least one boxing match each month, and agreed to pay the club $400 one week prior to the date set for the boxing match, and $350 on the evening of the contest, except that in the months of July and August, he agreed to pay $100. He agreed to pay the state tax of 5 per cent. and the federal tax of 10 per cent. The club agreed to furnish a large hall known as Manhattan Casino, lighted and heated, and with seats, boxes, and ring all arranged for a boxing contest. Plaintiff in error agreed to pay the ticket takers and ticket sellers and other necessary officials, such as the referee, physician, timekeepers, ushers, and announcers. It was agreed that "boxing shows" should be mutually agreeable to the parties and further that—

"This contract shall remain in force during the life of the present license held by the Manhattan Boxing Club, Inc., but may be terminated by either party by the giving of 90 days' written notice."

Under the state law the boxing commission had authority to grant a license to a corporation only. The plaintiff in error neither applied for nor was he granted a boxing license. The boxing exhibitions were conducted under the sanction and authority of New York boxing commission and the license was issued to the club.

[1] The plaintiff in error has been tried and convicted on an indictment charging, in eight counts, a violation of sections 800, 802, and 1308b of the Internal Revenue Law known as the Revenue Act of 1918 (40 Stat. 1057, 1120, 1143) and in four counts of embezzlement of government moneys in violation of section 47 of the United States Criminal Code. The first, fourth, seventh, and tenth counts charge the plaintiff in error with having willfully failed and refused to account for and pay over sums of money due as an excise tax to the United States on the amount of money received as admissions paid to said exhibitions.

This charge is based on section 1308 (section 6371½h) which provides that—

"Any person who willfully refuses to pay, collect, or truly account for and pay over any such tax, make such return or supply such information at the time or times required by law or regulation, or who willfully attempts in any manner to evade such tax shall be guilty of a misdemeanor and in addition to other penalties provided by law shall be fined not more than $10,000 or imprisoned for not more than one year, or both, together with the costs of prosecution."

In counts second, fifth, eighth, and eleventh, he is charged with a violation of the same section, subdivision (a) of which provides:

"That any person required under titles V, VI, VII, VIII, IX, X, or XII, to pay or to collect, account for and pay over any tax, or required by law or regulation made under authority thereof to make a return or supply any information for the purposes of the computation, assessment or collection of any such tax, who fails to pay, collect, or truly account for and pay over any such tax, make any such return or supply any such information at the time or times required by law or regulation shall in addition to other penalties provided by law be subject to a penalty of not more than $1,000.00."

Counts third, sixth, ninth, and twelfth charge an embezzlement in having unlawfully, knowingly, and willfully embezzled moneys of the United States representing the tax on admissions paid to the exhibitions. Section 47 of the United States Criminal Code makes it a crime for any one to "embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States." The plaintiff in error has no connection as an officer or director of the corporation and from all that appears in the record, he had but a contractual relation. The boxing club was organized by an attorney, who secured a license, and thereupon it entered into a contract with the plaintiff in error for conducting boxing exhibitions under its license and for producing the revenue referred to in the contract. Boxing exhibitions were held and admission fees were collected. There is no proof as to the amount of tax collected, save such as might be considered included in the admission charges paid. Some free tickets were issued, but there is no evidence to show that a tax was collected with these complimentary tickets when used.

The indictment in no way refers to the contract entered into between the parties, and its reading would indicate that the plaintiff in error, by authority of law, had secured a license to conduct the boxing matches, received the admission funds, as well as the tax of 1 cent for every 10 cents or fraction thereof, together with the tax on the complimentary tickets, and that this money was collected pursuant to the internal revenue statutes (40 Stat. 1057, 1103, 1120, 1143 [Comp. St. Ann. Supp. 1919, §§ 6309⅓c, 6309⅝a, 6309⅝c, 6371½h]) in such case made and provided. At the trial the government offered the contract in evidence and proved the facts substantially as stated. The state law providing for a boxing commission and permitting exhibitions is chapter 912 of the Laws of the state of New York of 1920.

Pursuant to the requirements of the state law, the plaintiff in error filed reports for the Central Manhattan Boxing Club, Inc., setting forth the names of the boxers taking part, the duration of the bouts,

the decisions, the payments made to the boxers, together with the tax and the gross receipts, net receipts, state tax, and federal tax. He executed this instrument as the matchmaker of the boxing club. These reports were prepared on blanks furnished by the boxing commission. Other reports were prepared by the assistant treasurer of the corporation, which were to like effect. The tax due the state was paid by the corporation.

It is clear that the plaintiff in error had no right and could not secure a license to conduct boxing contests under the laws of New York; only a corporation could be so licensed. It would have been contrary to the statute for him to have attempted to do so. The enterprise must be considered as that of the corporation. In the legal sense, he was but the agent, matchmaker, and manager of the Central Manhattan Boxing Club, Inc. The contract was not a mere renting of the premises. The corporation employed the services of Johnston as well. He paid a fixed sum as stated in the contract, which meant that the club was to obtain the first profits and be assured that they would reach a total sum of $750 a month. The nature of the business may have demanded that. Whatever may have been the foundation for this arrangement, it was the agreement of the parties. We think that the federal tax should be paid, as was the state tax, by the corporation. In a legal sense, the box office receipts belonged to the principal or the employer of the plaintiff in error—the corporation. His collection of the admission money was as agent or manager, with the vested interest as described in the contract. Therefore the corporation owning the box office receipts became the custodian of the federal tax collected, to be subsequently paid to the government. Within the purview of the New York statute permitting boxing exhibitions, he was not the conductor of the contests nor the collector of the money. It is not claimed nor proven that the plaintiff in error aided or abetted the corporation in the willful failure to pay the tax.

[2, 3] Nor do we think that there was an embezzlement of the federal tax, as alleged in counts third, sixth, ninth, and twelfth. The moneys collected at the box office were not the property of the United States. The law imposed the duty upon the owner of the enterprise to make returns and pay the tax to the collector of internal revenue. The obligation so to do did not make the moneys those of the United States. The obligation to pay the government the tax is not complied with until the tax has been paid. The Treasury Department has so considered admission moneys paid to a theater as a tax which were stolen before payment was made to the government. See Internal Revenue Bulletin, vol. 1, No. 25, issued June 19, 1922, at page 18. Treasury decisions, such as are regulations of a department of the government, addressed to and reasonably adapted to the enforcement of an act of the Congress, the administration of which is confided to such department, have the force and effect of law, if they be not in conflict with express statutory provisions. United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; United States v. Birdsall, 233 U. S. 223, 34 Sup. Ct. 512, 58 L. Ed. 930; United States v. Morehead, 243 U. S. 607, 37 Sup. Ct. 458, 61 L. Ed. 926. We agree with the result

as directed in this ruling (but which does not amount to a regulation) and hold that the moneys received at the box office, including the tax, were not the moneys of the United States. It therefore afforded no basis upon which to support an indictment for embezzlement of property of the United States, within section 47 of the United States Criminal Code. The motion to direct a verdict of acquittal at the end of the government's proof, renewed when the defendant rested, without offering evidence, should have been granted.

Judgment is reversed, with directions to the District Court to dismiss the indictment.