## CAPEWELL HORSE NAIL CO. v. WALSH, Collector of Internal Revenue.

(District Court, D. Connecticut. February 16, 1924.)

No. 2574.

1. **Internal revenue ☞7—Corporation may deduct for income tax purposes losses sustained by subsidiary corporation acting as mere selling agent.**

Under Revenue Act 1916, tit. 1, pt. 2, §§ 10, 12(a), being Comp. St. §§ 6336j, 6336l, Regulations 22, art. 125 and Regulations 33, art. 208, corporation could deduct for income tax purposes losses sustained by subsidiary corporation, if latter was not independent corporation, but mere selling agency, whose policy was directed and persons in charge paid by parent company.

2. **Internal revenue ☞4 — Regulations of Treasury Department concerning income tax have force of law.**

Regulations of Treasury Department concerning income tax returns, not in conflict with express statutory provisions, have force of law.

See, also, 1 F. (2d) 818.

Arthur L. Shipman, of Hartford, Conn., for plaintiff.

Allen K. Smith, U. S. Atty., of Hartford, Conn., for the United States.

THOMAS, District Judge. This is an action brought to recover the sum of $1,676.87, with interest from June 24, 1920, alleged to have been erroneously collected by defendant on account of income taxes of plaintiff for the years ending December 31, 1916, and December 31, 1917. The amount of additional taxes paid for 1916 was $416.64, and $49.99 penalty. For the year 1917 the amount of additional taxes was $1,080.75, with penalty of $129.69.

Plaintiff alleges in its complaint that it filed its income tax return for the year 1916, reporting its net income as $99,826.95; that it owned a subsidiary, the Capewell Horse Nail Company of California, a selling

agency of plaintiff, whose officers and salesmen were paid directly by plaintiff; that separate books are kept by plaintiff and its subsidiary, and collections made by the subsidiary, but checked out only by plaintiff, all salesmen, managers, etc., of the subsidiary being paid by the plaintiff; that the subsidiary, during the year 1916, had a difference between receipts and expenses amounting to $21,147.23, which plaintiff deducted as an expense and loss for the year 1916; and that the Treasury Department held that such deduction was improper, and assessed an additional tax in the amount of $416.64, and penalty of $49.99.

The complaint alleges payment in the following words: "Said sum was paid to the defendant June 24, 1920." It is alleged that on January 14, 1921, plaintiff filed a claim for refund, and that said claim was denied on March 29, 1922.

With respect to the allegations relating to the tax sought to be recovered for the year 1917, the complaint alleges that for that year plaintiff in its returns reported a net income of $80,264.09. A reiteration of the relations between the plaintiff and the Capewell Horse Nail Company of California is contained in this portion of the complaint. It is alleged that the difference between the receipts of the subsidiary and its expenses for the year 1917 was $18,012.41. It is also alleged that the plaintiff deducted this amount as a loss in its income tax return for the year 1917 as an expense in its operation; that the Treasury Department disallowed such loss and assessed a tax for that year of $1,080.75, with interest and penalty amounting to $129.69; that the plaintiff filed a claim for refund, which was denied on March 29, 1922. Judgment is prayed for in the amount of the additional assessment with penalties.

To the bill of complaint the defendant filed a demurrer, assigning for his reason therefor that the plaintiff failed to state a cause of action, since he did not allege that the taxes in question were paid under protest. This court overruled the demurrer, per opinion on file, and the case is now before the court at final hearing upon the complaint and the answer of the defendant.

The pertinent part of section 10 of the Revenue Act of 1916, title I, part 2 (Comp. St. § 6336j), provides for the levy of the tax as follows:

"That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, * * * a tax of two per centum upon such income."

Section 12 (a) of the Revenue Act of 1916 (Comp. St. § 6336l), provides for deductions as follows:

"In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

"First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties. * * *

"Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise."

Article 125 of Regulations 22 is as follows:

"Subsidiary to Make Return.—The rule hereinbefore set out is not intended to apply to those cases wherein one corporation operating for itself is controlled by another through the ownership of a majority of all of its stock. In this case the controlling corporation is, for the purpose of this title, merely a stockholder, and the subsidiary company will be required to make a separate and distinct return, accounting for all the income received by it during each taxable, year (T. D. 2442) and the holding company, will return as income any dividends or earnings received from the operating company."

Article 208 of Regulations 33 is as follows:

"Subsidiaries Operated as Integral Parts.—If subsidiary corporations exist in name only, or are mere agents or integral parts of the parent corporation and as such transact no business and have no income of and for their own account, and incur no expenses, all business being transacted, all income being received and all expenses being paid directly by the parent company, no separate accounts being kept by or for such subsidiaries, it will be considered that such subsidiary concerns do not have any taxable income within the meaning of this title, and so long as they are so operated no tax liability will be asserted against them.

"Subsidiaries to Make Returns.—In such cases, however, such subsidiary corporations will be required to make returns of annual net income, and shall indorse thereon a statement to the effect that the corporation making the return is a subsidiary or integral part of the parent company (naming it) and that, for its own account, it has no income from any source whatever, that it

makes no disbursements, and that all the business done in its name is done for the account of and as the business of the parent corporation, and will be accounted for in the return of such parent corporation."

Article 631 of Regulation No. 62 states the purpose and effect of the law in the following words:

"Consolidated returns are based upon the principle of levying the tax according to the true net income and invested capital of a single enterprise, even though the business is operated through more than one corporation. Where one corporation owns and controls the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the invested capital and net income of a branch form a part of the invested capital and net income of the entire organization."

The above provisions seem to sufficiently set forth the rules and regulations governing the question to be here decided. The government in stating its issues, makes two claims in the form of interrogatories, as follows:

(1) Can an action be maintained against a collector of internal revenue for the recovery of taxes which were paid to him voluntarily and without duress and protest?

The first question has been answered in the affirmative by the defendant's demurrer overruled, as on file, and the exception to this ruling has been saved to the government, as appears in the record when the defendant, at the conclusion of the testimony, orally moved to dismiss on the grounds:

"First. It does not appear from the complaint of the plaintiff that the sums alleged to have been paid to the defendant were paid under protest.

"Second. It does not appear from the complaint of the plaintiff that the sums shown to be recovered with interest from the defendant were paid under protest by the plaintiff.

"The Court: Motion denied.

"Mr. Smith: And the defendant may have an exception, your honor?

"The Court: Exception noted."

[1] The second contention is stated in the form of this question: (2) Do the Revenue Acts of 1916 and 1917 permit a corporation

1 F.(2d)—52

to deduct for income tax purposes losses sustained by a subsidiary corporation?

Whether the answer to that question be "Yes" or "No" depends upon the facts, and just what is meant by a subsidiary corporation, its method of doing business, and whether the subsidiary company is a mere selling agency or an independent corporation, operated and controlled by itself, by its own officers and directors, or whether it is a mere corporate entity, owned, operated, and controlled by the parent company. If it has its own officers, who direct and control its policy and operate it independently of the parent company, it manifestly brings itself within the regulations which provide that such company must not only file its return, but pay the tax, and if it suffers a loss that loss cannot be deducted by the parent company. On the other hand, if it is a mere selling agency, if it merely has a corporate entity for certain reasons, if its policy is directed from the home office, if its persons in charge are directed and paid by the parent company, then it may be said that under the rules and regulations it not only pays no tax in case of profit, as in such case the parent company would have to pay it, but its loss, if any, is likewise a proper deduction for the parent company to make.

From the record in this case I conclude that the following facts are fairly deducible therefrom:

(1) Prior to the incorporation of the California company, the San Francisco office was merely a branch office of the plaintiff, having no independent existence, except as a branch, keeping no separate accounts, no books of account, except for memorandum purposes, and that it received instructions as to the conduct of the business from the Capewell Horse Nail Company, the parent company, located in Hartford.

(2) That there was no change in the manner of conducting business at its branch office after the incorporation of the California company.

(3) That the San Francisco office did not manufacture the goods it sold; that it sold the plaintiff's product; that it did not exercise any control as an independent corporation over its collections; that it did not, as an independent corporation, pay any of the expenses of its branch office; that all its accounts receivable were deposited as collected, either to the parent company's credit or to the credit of the San Francisco incorporated branch office, but that in either event moneys were withdrawn from such ac-

counts only at the direction of the parent company and its officers; that the business of the branch office, after its incorporation, was conducted solely under instructions from the home office of the parent company; that the officers and employees of the San Francisco branch office were paid either by the parent company's check or by check issued on the instructions of the parent company; and that the officers of the California corporation were merely nominal officers and conducted business for the benefit of the plaintiff.

(4) That the parent company owned all of the capital stock of the California corporation and had owned it since the branch was incorporated.

(5) That, while some books of account were kept by the San Francisco branch, they were not regarded as the books of original entry; that all the entries in the San Francisco books were transferred in detail to the parent company's books; and that the books kept by the San Francisco office were merely in the nature of memoranda to facilitate the transaction of business in San Francisco.

On these facts and conclusions drawn from the testimony, and applying the provisions of the regulations cited supra, I conclude that the plaintiff is entitled to judgment for the following reasons:

(1) Because it appears beyond doubt that the San Francisco branch was in fact an integral part of the parent corporation and had no real independent corporate existence or management.

(2) Because under the provisions of Regulations No. 33 (revised), issued by the Treasury Department and applicable to the 1916 and 1917 taxes in question, the California incorporated office was obliged to and did file a return of its income, but was not subject to the payment of any tax.

[2] These regulations are not in conflict with express statutory provisions, and therefore have the force of law. Johnston v. United States (C. C. A.) 290 Fed. 120, 123. A careful search has been made for decisions having a direct bearing on the questions before us, but there appears to be none.

However, the right of the plaintiff to have the parent company and the San Francisco branch considered as one enterprise, and to pay taxes on the basis of the aggregate net earnings, seems to be clear. In view of the facts, together with the inherent justice of the case and the application of the provisions of the regulations above cited, a judgment may be entered for the plaintiff

to recover $1,676.87, with interest at 6 per cent. from June 24, 1920; and it is so ordered.