## BOWE–BURKE MINING CO. et al. v. WILL-CUTS, Collector of Internal Revenue.

District Court, D. Minnesota, Third Division.
July 18, 1927.

1. Internal revenue ⟨⟩25—To justify consolidation of corporations for income tax purposes, one must be subsidiary of other and *engage in same or allied business* (Revenue Act 1921, § 1331 [26 USCA § 1067; Comp. St. § 6371⅘*l*]; Regulations, of Commissioner of Internal Revenue of 1918, No. 41, art. 77).

Under Revenue Act 1921, § 1331 (26 USCA § 1067; Comp. St. § 6371⅘*l*) and Regulations of Commissioner of Internal Revenue of 1918, No. 41, art. 77, to justify consolidation of corporations for income tax purposes, one corporation must be subsidiary of the other, and be engaged in the same or closely related business.

2. Internal revenue ⟨⟩9(27)—Mining lease cannot be considered as intangible property for income tax purposes.

Mining lease, giving lessee right of possession of valuable property and to remove and reduce to ownership iron ore, cannot be considered as intangible property for income tax purposes.

3. Internal revenue ⟨⟩9(27)—As respects invested capital for income tax purposes, cost of mining lease to corporation, and not to stockholders or to its corporate transferor, controls (Revenue Act 1917, § 209 [Comp. St. § 6336⅞j]).

Where stockholders transferred mining lease to one of two corporations controlled by them, and transferee subsequently transferred lease to the other, a mining corporation, *held* that, in determining value of lease for income tax purposes, the corporations must be considered separate and apart from their stockholders, and cost of lease to mining company, and not to stockholders or to other corporation, determines its value as invested capital, under Revenue Act 1917, § 209 (Comp. St. § 6336⅞j).

4. Internal revenue ⟨⟩9(27)—Mining lease, transferred to mining corporation for stock, held "invested capital" to extent of its value; "nominal capital" (Revenue Act 1917, § 209 [Comp. St. § 6336⅞j]).

Mining lease, transferred to mining corporation for stock in such corporation, became "invested capital" of mining corporation for income tax purposes, to extent of its reasonable value, and, such value being substantial, corporation had more than a "nominal capital," within Revenue Act 1917, § 209 (Comp. St. § 6336⅞j).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

5. Internal revenue ⟨⟩9(27)—Value of tangible property, and not stock given therefor, determines whether corporation has "invested capital" or "nominal capital" (Revenue Act 1917, § 209 [Comp. St. § 6336⅞j]).

Where money's worth in form of tangible property is contributed to corporation as invested capital, value of such property, and not the par value of the stock given therefor, determines whether corporation has "invested capital," or not more than "nominal capital," within Revenue Act 1917, § 209 (Comp. St. § 6336⅞j).

At Law. Action by the Bowe-Burke Mining Company and another against Levi M. Willcuts, Collector of Internal Revenue of the United States for the District of Minnesota. Judgment for defendant.

Clarence T. Lowell, of Minneapolis, Minn., for plaintiffs.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and Leland W. Scott, Asst. U. S. Atty., of Washington, D. C., for defendant.

CANT, District Judge. The questions for consideration in this case are:

(a) Whether, for the year 1917, it was proper to consolidate the plaintiff corporations for income tax purposes.

(b) Whether the plaintiff Mining Company during the year 1917, was a corporation having no invested capital, or not more than a nominal capital, within the meaning of the provisions of section 209, Revenue Act of 1917 (40 Stat. 300, c. 63 [Comp. St. 6336⅞j]).

[1] 1. To justify consolidation for the purposes here in question, it is necessary that one corporation should have been a subsidiary of the other, with close relations of the character hereinafter specified. There are two grounds, at least, upon which to base a holding that the corporations in question do not stand in the relation of parent and subsidiary towards each other:

(a) They are not engaged in the same or closely related lines of business. The mining company is not an arm or branch of the so-called parent company, and is not engaged in carrying out a detail of the work or business of that company, as, for example, a sales corporation might do. This is the underlying thought which justifies consolidation in such cases, and such thought is emphasized in the case of Capewell Horse Nail Co. v. Walsh (D. C.) 1 F. (2d) 815, and in article 77 of Regulation 41 issued by the Commissioner of Internal Revenue in 1918, and in section 1331 of the Revenue Act of 1921 (42 Stat. 319, c. 136 [26 USCA § 1067]).

(b) Under all the evidence, the picture is rather that Messrs. Bowe and Burke, for the purpose of carrying out their business undertakings, organized two separate corporations, of which they have had complete control, and which ordinarily and regularly

would function quite separate and apart, but which, it has been arranged, do in fact and to a considerable degree co-ordinate with each other.

There are rather delicate points to be considered in determining whether one corporation is a subsidiary of the other for the purposes here in question, but the weight of the argument is with the defendant thereon. This leads to the conclusion that the corporations cannot be consolidated for the purpose of making income tax returns. This conclusion is also supported by the claim of defendant that under the law there is no authority for allowing a consolidation for such purpose.

[2] 2. The mining lease here involved, and the rights acquired thereunder, cannot be considered as intangible property. Such lease gave to the lessee the right of possession of valuable property of a substantial character, and the further right to remove and reduce to ownership large quantities of valuable iron ore therein or thereon. See Cotton v. Bass (D. C.) 7 F.(2d) 900, 902. Lynch v. Alworth-Stephens Co., 267 U. S. 364, 369, 45 S. Ct. 274, 69 L. Ed. 660. Although termed a lease, the instrument gave greater rights in the property than a conveyance for life of the same property, without the right to commit waste thereon, would have done.

3. The character of the property, the fact that Messrs. Bowe and Burke were willing to expend considerable sums of money in testing and proving the same, and the fact that Pickands, Mather & Co. were willing to enter into the contract which they did, all suggest strongly that the lease was of substantial value. With such lease as the sole substantial basis therefor, the mining company in its return claimed a large invested capital, and, except as to amount, it made the claim rightly. Such claim does not necessarily prevent that company from now asserting that it had no invested capital, but it has a considerable bearing upon the correctness of that assertion. The lease was procured through the superior knowledge, skill, and enterprise of Messrs. Bowe and Burke. When they had it turned over to the Bowe-Burke Company, they properly might have arranged for the issue to them of considerable additional stock in that company therefor, because they were contributing something of substantial value, and, when that company turned over the lease to the mining company, the former might properly have exacted from the latter a considerable amount of stock in

the new company as a consideration for the lease, and this, in fact, was done. In effect, this was giving the consideration to Messrs. Bowe and Burke, because it increased the value of their stock in the first company.

[3, 4] 4. The question is not what the lease cost Messrs. Bowe and Burke, or what it cost Bowe-Burke Company, but what it cost the mining company—what, if anything, it represented as invested capital in that company. In this connection the corporations must be considered separate and apart from their stockholders. Eisner v. Macomber, 252 U. S. 189, 214, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Bowe and Burke and the Bowe-Burke Company might have made a present of the lease to the mining company, which would have given rise to other and interesting questions; but that was not the course taken. It was transferred in the ordinary business way, on the theory that it had value, and that those who contributed it to the mining company should have stock in that company, representing such value. If the lease was so contributed to the mining company as a valuable asset, as money's worth (La Belle Iron Works v. United States, 256 U. S. 377, 387, 388, 41 S. Ct. 528, 65 L. Ed. 998), in payment for stock, it became invested capital to the extent of its reasonable value. This would have been so, if the stock had been paid for in money, no matter how obtained. It was not less so when the payment was in money's worth. This is not a case where all the later value of the lease represented appreciation during the period of operation under the lease. There was such appreciation, but manifestly, from as early a date as November, 1916, the lease was of proven value. It was then recognized as the very important underlying factor in the production of the income which was anticipated. Whatever the amount of that value, it was clearly sufficiently large to take the mining corporation quite out of the class contemplated by section 209 of the Revenue Act of 1917. The lease was relatively too large and important a factor in the contemplated operations to be considered as representing merely nominal capital in the corporation.

The actual value of the lease as a basis for the computation of income taxes was determined by the Commissioner of Internal Revenue in the usual course from a consideration of the information acquired through the field audit of the business of plaintiffs, which had been made under his direction, and from the return which had been made by the corporation, applying thereto the rules of law

as he understood them to be, and his experience in similar cases. It was not necessary that the Commissioner, or the person under him who actually performed the service, should have made a personal inspection of the property. That, often, would not be practicable, and in any event would not help. A gratifying feature of this work of the Commissioner is that, so far as can be seen from the evidence which has been introduced in the case, his conclusions were probably very nearly right. In any event, the strict accuracy of the estimate as to value is not here of primary importance. The matter of importance is whether or not the real value was clearly so large that it must be considered as constituting more than a merely nominal amount of invested capital. The ultimate question is whether or not the corporation came within the provisions of section 209, Revenue Act of 1917. As already indicated, the conclusion reached is that it did not.

5. In an attempt to dispose of this matter correctly, the court has assumed and considered various possible situations, with a view to gathering light by analogy therefrom, and for the purpose, also, of testing the accuracy of the views here expressed. Messrs. Bowe and Burke might have retained the lease in their own names, or they might have allowed it to remain in the name of the Bowe-Burke Company, or they might have accepted therefor a very few shares of stock, with low par value, in the mining company. On consideration, nothing of special value comes from any of these several situations. The individuals would gain nothing by retaining the lease in their own names. There were doubtless good business reasons for taking the steps which they did. There were advantages in having this entirely separate line of business carried on by a separate corporation, which, in case of later disaster, would not jeopardize any interest of Bowe and Burke as individuals, or of Bowe-Burke Company, the corporation, except as they might be stockholders in the mining company, and there were special reasons for having the mining operations carried on by a corporation organized under our laws relating to mining corporations.

[5] Doubtless these views were considered at length and agreed to by both Messrs. Bowe and Burke and by Pickands, Mather & Co. The course taken was open and straightforward. No attempt was made to cover up. It was undoubtedly the only course to pursue, and the rights of all parties have been best protected thereby. Certain of the other courses which might have been followed, such as accepting a few shares of stock in the mining company for the lease, would have involved sharp practices and would have produced much trouble and no success. In such cases, where money's worth is contributed as invested capital, and this in the form of tangible property, it is the value of the property, and not the par value of stock received therefor, which controls. If the rule were otherwise, it would be a species of trickery and fraud to accept the nominal amount of stock, and where the purpose was wrongfully to bring the corporation within the provisions of section 209, supra, the transaction would be overturned.

6. On the whole, the matter has been worked out according to the substantial justice thereof under the law, and the conclusions should be, as indicated:

(a) That the corporations may not be consolidated for income tax purposes; and

(b) That the mining company, during the year 1917, had more than a nominal capital, and did not come within the purview of section 209, Revenue Act of 1917.

The judgment will therefore be for the defendant.