## NOWLAND REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4380.

Circuit Court of Appeals, Seventh Circuit.

March 11, 1931.

Frank C. Olive, of Indianapolis, Ind., and Theodore Schmidt, of Chicago, Ill., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and F. Edward Mitchell, Sewall Key, and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

Petitioner contended that the organization of petitioner and the concurrent leasing of the property to Schmidt were for the sole purpose of procuring the desired loan; that this purpose was effected through the issuance and sale of the preferred stock; that the obligation to repay the loan by retiring the preferred stock in installments corresponded with the obligation of a mortgagor to make serial repayments of the borrowed principal; and, lastly, that the payments made by him constituted additional capital contributions and not items of current income to the corporation. In other words, petitioner argued that the corporate financing was a loan in the disguise of a preferred stock issue; and that we should ignore the form of the transaction and look to its substance and hold that the payments were not income.

Petitioner relies on Arthur R. Jones Syndicate v. Commissioner (C. C. A.), 23 F.(2d) 833, 834. In that case the organizer of the syndicate sought a loan when unable to sell all the certificates of the syndicate. The lender demanded the usurious rate of 14 per cent.

To avoid the Illinois Usury Law the syndicate's stock set-up was changed and a first preferred stock issue bearing a 14 per cent. dividend was issued to the loaner. The court considered two questions: (a) Was the transaction between the lender and the syndicate a loan? And (b) should the taxpayer be permitted to show the true relationship of the parties? This court answered both questions in the affirmative. The sole basis for that determination was the fact that the parties were seeking to evade the Usury Law, and the court, as it always will do, permitted the borrower to show the true character of the transaction. The court said:

"But the better reasoning sustains the view that a borrower whose necessities lead him to the door of the usurer may always show—by evidence aliunde the contract—the real character of the transaction. The very necessities of the borrower who pays a usurious rate of interest make it necessary for courts to admit his oral testimony to dispute his written word. * * * We therefore conclude that a taxpayer who borrows money at a usurious rate of interest and who, to conceal the usury, is compelled to execute a document which does not correctly describe the relationship of the parties, may, as against the government, disclose the true relationship of debtor and creditor."

The transaction there consummated was for the purpose of evading the usury law and violating it by subterfuge. In the instant case the parties were not violating the mortgage tax law but were merely evading it and the evasion resulted in no illegal consequences. There is no duty upon the court to look through the form of the corporation to prevent an attempted evasion of the state taxing law, when the evasion is not illegal—at least for the purpose of aiding a borrower who found himself burdened with an income tax. The borrower was a party to the plan to dodge the state tax, and therefore, is in no position to demand the court's aid in evading the Federal Income Tax, which resulted from the evasion of the state tax. In avoiding the personal property tax collector, he found himself in the hands of the federal income tax collector. He desired to avoid the latter's clutches without being remanded to the former. His position may be tragic but it is not appealing.

Another difference between the Jones Syndicate Case and the instant case is worthy of consideration. In the Jones Case, a syndicate, not a corporation, was involved. A syndicate is not a corporation (Holmes, Federal Income Tax, § 132) and in character is somewhat like a joint adventure (Bouvier, Law Dictionary). It can therefore be said that the court was not there required to obliterate the more impenetrable form of a corporate entity in order to ascertain the true nature of the transaction.

It was also contended by petitioner that the annual payments by Schmidt were to be treated as an addition to and part of the operating capital of the company, and not as income. Article 544 of Regulations 69 and 65 provide that:

"Where a corporation requires additional funds for conducting its business and obtains such needed money through voluntary pro rata payments by its shareholders, the amounts so received being credited to its surplus account or to a special capital account, such amounts will not be considered income, although there is no increase in the outstanding shares of stock of the corporation."

This regulation is obviously inapplicable to the present case because Schmidt did not make these payments as a stockholder but as a lessee. It was a mere coincidence that he was also a stockholder. The co-operative apartment house cases are also to be distinguished from the present case for the same reason. It is true that the lessees in those cases are also stockholders and that they agree in their leases to assessments for current expenses and reduction of indebtedness, but they agree to be subjected only to their proportionate share, which proportionate share is based upon the number of shares of stock they hold, which indicates that their liability arises as stockholder and not as lessee.

As an alternative contention, petitioner claimed the right to have the accounts of the petitioner consolidated with those of Schmidt, its president and sole common stockholder, under authority of section 240(d) of the Revenue Act of 1924 (26 USCA § 993 note) and section 240(f) of the Revenue Act of 1926 (26 USCA § 993(f). This section provides:

"In any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the commissioner may and at the request of the taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses."

The mandatory duty imposed upon the commissioner to consolidate the accounts of related businesses is tempered by the proviso that he need do so only if it is necessary to make an accurate distribution or apportionment of gains, profits, etc., between the accounts of the related businesses. The board found that during the years of 1923, 1924, and 1925 Schmidt was engaged in the general real estate and insurance business and, after the conveyance aforementioned, he still retained in his name a considerable amount of real estate and personal property, which he continued to rent, manage, and lease during these years. Petitioner's sole asset was the realty conveyed to it, and its sole business was to lease the proprety to Schmidt. Schmidt's individual activities were varied and were not interrelated with or interdependent upon the activities of the corporation. The only point at which the two businesses met is to be found in the aforesaid lease. The statute requires that the businesses be both related *and* owned or controlled by the same interests. Owned by the same interests they were, but it cannot be said that the two businesses were related. "Related" means "standing in relation; connected; allied; akin." "Related businesses" as that term is used in the statutes has been discussed in various decisions. Broadway Strand Theatre Co., 12 B. T. A. 1052; United Thacker Coal Co. v. Commissioner, 46 F.(2d) 231, decided January 2, 1931, by the Circuit Court of Appeals for the First Circuit; Brownsville Coal & Coke Co. v. Heiner (D. C.), 38 F.(2d) 248; Bowe-Burke Mining Co. v. Willcuts (D. C.), 22 F.(2d) 204; G. C. M. 2856, C. B. VII–1, 128; A. R. R. 6603, C. B. III–1, 441; Holmes on Federal Taxes (6th Ed.) p. 297.

We conclude that the decision in each case turns upon the facts of that case; that ordinarily the leasing and managing of one building is not related to the leasing and managing of another building; and that Schmidt's outside real estate business was in the instant case not related to the business of petitioner.

Moreover, we are not satisfied that it was necessary to consolidate the accounts of the two businesses "in order to make an accurate distribution or apportionment of the gains," etc., of the two businesses.

█ It is not perfectly clear from a reading of section 240(d), Act of 1924 (26 USCA § 993 note), to what extent a court may review the action of the commissioner to ascertain whether a fact situation exists which makes it necessary to consolidate accounts in order to make an accurate distribution of profits.

What is meant by the word "accurate" as used in the statute? Who determines whether a consolidated statement depicts more accurately distribution or apportionment of gains than two independent statements? While we are not inclined to deny to the board or to this court the right to review the question presented by this test, yet obviously there is, we think, some discretion left in the commissioner, and the exercise of that discretion can only be disturbed when an abuse of it is shown.

The order of the Board of Tax Appeals is affirmed.