## UNITED STATES v. WHYEL et al.

District Court, W. D. Pennsylvania. January 19, 1927.

No. 1227.

1. **Internal revenue** ⚖➙7(28)—**Brothers owning 94.4 and 99.6 per cent. of stock in two corporations owned "substantially all the stock," and income tax was properly based on consolidated net income of corporations (Revenue Act 1918, § 240 [b], being Comp. St. § 6336⅛ss).**

Where two brothers owned not less than 94.4 per cent. of the stock of one corporation and 99.6 per cent. of stock of another corporation, they owned "substantially all the stock" of both corporations, within Revenue Act 1918, § 240 (b), being Comp. St. § 6336⅛ss, and corporation income taxes were properly based on the consolidated net income of both corporations, application of statute not depending on actual manipulation or shifting of profits to evade excess profits taxes; "substantially all the stock" not requiring a definitely fixed amount of percentage, but being somewhat elastic, according to facts of particular case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Substantially.]

2. **Internal revenue** ⚖➙2(10)—**Statute requiring affiliated corporations to make consolidated income tax return held valid (Revenue Act 1918, § 240 [Comp. St. § 6336⅛ss]).**

Revenue Act 1918, § 240 (Comp. St. § 6336⅛ss), requiring affiliated corporations to make consolidated return of net income and invested capital for income tax purposes, *held* not unconstitutional, as furnishing no definite percentage of stock, nor as requiring one taxpayer to pay tax computed on another taxpayer's income.

3. **Internal revenue** ⚖➙28(2)—**Whether same persons own or control substantially all stock of corporations, so as to require consolidated income tax return, is fact question for court Revenue Act 1918, § 240 [b], being Comp. St. § 6336⅛ss).**

Whether same persons possess or control substantially all of the stock of corporations, so as to make corporations affiliated, within

Revenue Act 1918, § 240 (b), being Comp. St. § 6336⅛ss, requiring consolidated income tax return by affiliated corporations, is question of fact for court.

4. **Constitutional law** ⚖➙48—**In case of doubt, revenue statute must be held constitutional.**

If there is any doubt as to the constitutionality of a revenue statute, court must hold act constitutional.

5. **Internal revenue** ⚖➙28(2)—**Failure to file consolidated income tax return for affiliated corporations held not fraudulent as respects running of limitations against government's suit to collect additional tax (Revenue Act 1918, § 240 [b], being Comp. St. § 6336⅛ss); Revenue Act 1921, § 250 [d] [1] [2], being Comp. St. § 6336⅛tt; Revenue Act 1924, § 277 [a] [2], and § 278, [a] [d] [e], being Comp. St. §§ 6336½zz[4], 6336½zz[5]).**

Where Commissioner of Internal Revenue, who knew all the facts, was for three years himself undecided whether corporations should file separate or consolidated income tax return as affiliated corporations, within Revenue Act 1918, § 240 (b), being Comp. St. § 6336⅛ss, and several times changed his mind as to kind of return to be filed, no fraud can be imputed to defendants for failing to file consolidated return, as respects running of limitations against government's suit to collect additional tax under Revenue Act 1921, § 250, (d) (1) (2), being Comp. St. § 6336⅛tt, Revenue Act 1924, § 277 (a) (2), and section 278 (a) (d) (e), being Comp. St. §§ 6336½zz(4), 6336½zz(5).

6. **Internal revenue** ⚖➙28(2)—**Whether corporations should file consolidated income tax return as affiliated corporations is question of law (Revenue Act 1918, § 240 (b), being Comp. St. § 6336⅛ss).**

Whether two or more corporations should file a consolidated income tax return as affiliated corporations, within Revenue Act 1918, § 240, subd. (b), being Comp. St. § 6336⅛ss, is a question of law, which must often be determined by courts.

7. **Fraud** ⚖➙3—**Misrepresentations of past or existing fact, or something equivalent thereto, "actual fraud."**

Generally there can be no fraud without misrepresentations of a past or existing fact or something equivalent thereto; "actual or positive fraud" consisting in deceptive practice to induce another to part with property, or to surrender some legal right, or which accomplishes end designed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Fraud.]

8. **Fraud** ⚖➙6—**"Actual fraud" requires dishonest intent, but "constructive fraud" does not.**

The difference between actual and constructive fraud lies in the intention; if there is a dishonest intent, the fraud is actual; if there is no dishonest intent, but a false statement of fact, on which the other party acts to his injury, the fraud is constructive.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Constructive Fraud.]

**9. Internal revenue ⊜⟶28(2)—Statute authorizing government, in case of false or fraudulent income tax return, to sue within six years after assessment, held not retroactive (Revenue Act 1924, §§ 277, 278 [d] [e], being Comp. St. §§ 6336⅛zz[4], 6336⅛zz[5]).**

Revenue Act 1924, § 278 (d), being Comp. St. § 6336⅛zz(5), providing that income tax may be collected by distraint or court proceeding begun within six years after assessment of tax in case of false or fraudulent return, is not retroactive, and does not apply to return in October, 1919, on which additional tax was assessed in March, 1924, and suit begun January, 1925, was barred, in view of sections 277, 278 (e), being Comp. St. §§ 6336⅛zz(4), 6336⅛zz(5).

In Equity. Suit by the United States against Harry Whyel and another. Bill dismissed.

A. W. Gregg and I. R. Blaisdell, both of Washington, D. C., John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., for plaintiff.

THOMSON, District Judge. This is a bill in equity brought by the United States against Harry Whyel and George Whyel, former stockholders of the Whyel Coal Company, to collect an additional corporation income and profits tax assessed against said corporation for the year 1918.

The Whyel Coal Company was a West Virginia corporation, which, from 1914 to 1918, inclusive, operated in Marion county, W. Va., with its office and headquarters in Uniontown, Pa. The corporation having liquidated and surrendered its charter on January 10, 1919, the two defendants herein received all the corporate assets, and this suit is brought against them under the equitable trustee doctrine.

The Whyel Coke Company is a Pennsylvania corporation, engaged in the coke and coal business in Fayette and Westmoreland counties, Pa. Except that both companies had their offices in the same building at Uniontown, they appear to have been operated separate and distinct from each other. The coal company's tax return was filed under permission of the Commissioner of Internal Revenue, on or about October 1, 1919. An alleged additional tax in the sum of $37,028.85 was assessed on or about March 22, 1924. In this assessment, the taxes for the two corporations were computed upon the basis of the consolidated net income of the two corporations, and then apportioned between them in proportion to their respective net incomes; this on the theory that the corporations were affiliated within the meaning of

section 240 (b) of the Revenue Act of 1918 (Comp. St. § 6336⅛ss).

By way of answer, defendants deny that there was any tax due from the Whyel Coal Company; deny that the two corporations were affiliated within the meaning of the act of Congress, or, if so, that the statute requiring affiliation of corporations is unconstitutional and void. As a further defense, it is alleged that this suit is barred by the statute of limitations.

[1] First. As to the question of affiliation. This question must be determined from the facts and the construction of section 240 (b) of the act of 1918, which provides that: "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated * * * (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests." The question of fact is: Did Harry and George Whyel, during the year 1918, own substantially all of the stock in the two corporations? It is held in the case of In re Temtor Corn & Fruit Products Co. (D. C.) 299 F. 326, affirmed by the Circuit Court of Appeals 4 F. (2d) 195, that the fact of affiliation is a matter of judicial construction, and not a matter of administrative or departmental regulation. Without going into detail, the evidence shows that the two brothers owned, up to December 21, 1918, not less than 94.4 per cent. of the coal company's stock, and 99.6 per cent. of the Whyel Coke Company's stock.

The term "substantially all the stock" clearly indicates, not a definitely fixed amount of percentage, but is a somewhat elastic term, which must be construed according to the facts of the particular case. The ownership of 95 per cent. or more of the outstanding voting capital stock was deemed to constitute such affiliation, but was not a prerequisite thereto. It would seem that there can be no serious question that the two brothers actually had the control of these two corporations, and that they owned substantially all of the stock. It appears fairly clear that their unity of control was as effective as if they had owned 96, or even 100, per cent. of the stock of both corporations. The statute applies whenever substantially all of the stock of two or more corporations is owned or controlled by the same interests, and does not depend upon any actual manipulation or shifting of profits in an effort to evade excess profits taxes. I therefore find that the two corporations were affiliated during the year 1918, and that the return so made, so far as that question is concerned, was in accordance with law.

[2] In the next place, it is contended by de-

fendants that, if the two corporations were properly affiliated under the act of Congress, section 240 (b) of the Revenue Act of 1918 is unconstitutional, because the effect is to make a palpably arbitrary and unwarranted classification between taxpayers. The section in question provides in substance that corporations which are affiliated shall, under regulations to be prescribed, make a consolidated return of net income and invested capital, and the taxes shall be computed and determined upon the basis of such return, and the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective companies in such proportions as may be agreed upon among them, or, in the absence of such agreement, then on the basis of the net income properly assignable to each.

[3] Defendants allege that the statute fixes no definite percentage of stock, but instead uses the expression "substantially all the stock." The clear purpose of the act as to affiliation was to safeguard the interests of the government against the possible loss of revenue which would result from the evasion of the excess profits tax, through manipulation and shifting of profits, as between two or more closely associated corporations, where there was actual or potential unity of control of corporate affairs. Such control was deemed to exist whenever substantially all the stock was held as specified in section 240. It would appear that the term "substantially all the stock" has an ascertainable meaning, within reasonable limits, in connection with the clear purpose and object of the suit. This is a question of fact in cases of controversy, for the determination of the court, and requires no special judicial refinement to arrive at the proper result.

[4] Again, it is claimed that it is not within the power of Congress to impose a tax on one taxpayer, computed upon another taxpayer's income. It will be observed that in this suit the total tax is computed as a unit, based upon the total net income of the affiliated corporations; then the assessments are made against the respective corporations in such proportions as they may agree upon, or, in the absence of such agreement, on the basis of the net income properly assignable to each. Where unity of control between corporations actually exists, Congress certainly has power to enact legislation, so as to prevent manipulating or shifting profits in order to avoid taxation. There would seem to be no question of the right of Congress to tax net incomes. There is no question as to the right of two or more corporations to become affiliated, and,

where such relations are voluntarily assumed by the companies, there would appear no valid objection to the application of the statute, as the total tax is computed as a unit. The authority to distribute the tax equitably is vested in the corporations themselves, and it is by no means apparent that any hardship or injustice can result from such an arrangement. If I were in doubt upon this subject, it would be the court's duty to hold the act constitutional. The objection as to the constitutionality of the section in question cannot be sustained.

As to the statute of limitations: The question whether the government's claim is barred by the statute involves a careful consideration of the applicability and effect of section 250 (d) (1) and (d) (2) of the act of 1921 (Comp. St. § 6336⅛tt), and section 277 (a) (2) and section 278 (a) (d) and (e) of the act of 1924 (Comp. St. §§ 6336⅛zz[4], 6336⅛zz[5]). Section 250 (d) (1) provides that the taxes due shall be determined and assessed within five years after the return is filed, and that no suit or proceeding for the collection of the same shall be begun after the expiration of five years after the date when such return is filed.

The exception to this provision is in section 250 (d), which provides that, in the case of a false or fraudulent return with intent to evade the tax, or a failure to file a required return, the amount of tax may be determined, assessed, and collected in a suit or proceeding for the collection begun at any time after it comes due. The government evidently seeks to bring its case under this exception, as it alleges in paragraph 7 of its bill "that said return was incorrect, misleading, and false, in that it showed an invested capital for the calendar year 1918 of $253,011.07, and net income of $29,730.34, whereas, in truth and in fact, it should have shown a consolidated invested capital in connection with the Whyel Coke Company, a corporation affiliated with the Whyel Coal Company (herein referred to as the company). * * *" There have been several cases from which it might be inferred that any mistake whatsoever in drafting a federal income tax return would be construed constructive fraud. For instance, Eliot National Bank v. Gill (C. C. A.) 218 F. 600, United States v. Chicago & Eastern Illinois Railway Co. (D. C.) 298 F. 779, and other like cases; but these cases were decided under prior Revenue Acts of 1909 (36 Stat. 11) and 1917 (40 Stat. 300). In the last-named case the court said:

"It further appears that the act of 1916–1918 above referred to was merely a time lim-

itation upon the government's right to levy and collect taxes by summary proceeding, and was not intended to and did not limit the time in which it could proceed, in an action at law or a suit in equity (the necessary facts appearing), to collect the amount of its tax."

[5] Considering the allegations of the bill and the evidence produced, there has been no imputation against the Whyel Coal Company, or either of the two defendants, of any misrepresentation or concealment of any showing whatever that the return was made with "intent to evade the tax." All the facts were in the Commissioner's office from the beginning. The act of fraud charged is failure to file a consolidated tax return. The evidence shows that for more than three years the Commissioner himself was undecided what kind of a return should be filed. In November, 1920, he directed a consolidated return; in May, 1923, he decided on a separate return; and on March 11, 1924, he again changed his mind and required a consolidated return. Under these circumstances, that fraud should be imputed to the defendants in failing to file a consolidated return appears a mere travesty.

[6, 7] Whether a consolidated return should be filed is a question of law, which must often be determined by the courts. It can be generally said that there can be no fraud without misrepresentations of a past or existing fact, or something equivalent thereto. Actual or positive fraud consists in deceptive practice, in order to induce another to part with property, or to surrender some legal right, and which accomplishes the end designed. 2 Cooley on Torts, c. 16, p. 905. That there was no actual intent to defraud in this case is too clear for argument, and, since those important words are a part of the statute, I cannot render them ineffective by construing them as meaning constructive fraud.

[8] The difference between actual and constructive fraud lies in the intention. If there is a dishonest intent, the fraud is actual; if there is no dishonest intent, but a false statement of fact, on which the other party acts to his injury, the fraud is constructive. Stevens v. Alabama State Land Co., 121 Ala. 450, 25 So. 995. In view of the terms of the section, which takes away the bar of the statute only when there is a false or fraudulent return with intent to evade the tax, I am constrained to hold that this section has no applicability to the facts of this case; and if the act of 1921 is the act which applies, plaintiff's claim is barred by the statute of limitations.

[9] The next question is whether the bar of the statute is to be determined by the act of 1924. Under section 277 (a) (2), it is distinctly provided that the taxes shall be assessed within five years after the return is filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period. Section 278 (a) makes an exception to this provision in case of a false or fraudulent return. Section 278 (d) provides that, where the assessment is made within the period prescribed in section 277, or in this section, such tax may be collected by distraint or by a proceeding in court begun within six years after the assessment of the tax. Section 278 (e) provides: (1) That this section shall not authorize the assessment of a tax, or its collection by distraint or by a proceeding in court, if, at the time of the enactment of this act, such assessment, distraint, or proceeding was barred by the period of limitations then in existence; and (2) that the section shall not "effect any assessment made, or distraint or proceeding in court begun, before the enactment of this act."

As before stated, the return was filed in October, 1919, the additional tax assessed in March, 1924, and the suit was begun in January, 1925, more than five years after the return was filed. In the case of United States v. Cabot it was held by the Supreme Court of the District of Columbia that section 278 (d) of the act of 1924 has no retroactive application. In that case more than five years had elapsed since the return for 1919 was filed, and it was held that an action for the collection of the tax will not lie, though brought within six years after assessment within the statutory period was made; the assessment having been made before the passage of the act of 1924. To the same effect are the cases of Bowers v. New York & Albany Lighterage Co., Bowers v. Seaman, and Bowers v. Fuller (C. C. A.) 10 F.(2d) 1017. In those cases a writ of certiorari was allowed by the Supreme Court, but, after argument, the appeals were dismissed.

The question as to whether section 278 (e) (1) and (2) was intended to relate to the future only, or was to be given a retroactive effect, is conclusively settled by the proceedings before the committee on finance of the Senate, which had under consideration the Revenue Act of 1924. A. W. Gregg, appearing as special assistant to the Secretary of the Treasury, referring to the section, which had just been read, said: "That is to keep this section from having any retroactive effect, or to apply to things happening before its passage."

Again, when the section was under consideration, Mr. Gregg said: "That is to pre-

vent the giving of any retroactive effect to the provision of this act. The taxes under prior acts stand on their own footing, and this applies only after the passage of this act."

The above quotations are from the official government publication entitled "Hearings before the Senate Committee on Finance, United States Senate, Sixty-Eighth Congress, First Session, on H. R. 6715, March 7, April 8, 1924." This appears conclusive of the purpose which Congress had in mind when the act of 1924 was passed, and they expressed this meaning in reasonably clear English when they said: "This section shall not affect any assessment made, or distraint or proceeding in court begun before the enactment of this act."

In the case before us the return and assessment were made prior to the passage of the act of 1924, and, although made within the statutory period of five years, no action was begun for nearly one year later—many months beyond the five-year limitation. For this reason, plaintiff's action cannot be maintained, because of the bar of the statute.

The plaintiff's appeal is therefore dismissed, with costs. A decree may be drawn accordingly.