**BROWNSVILLE COAL & COKE CO. v. HEINER, Collector of Internal Revenue.**

No. 5664.

District Court, W. D. Pennsylvania.

Jan. 22, 1930.

Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

John D. Meyer, Wm. J. Aiken, and Jno. A. McCann, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action against the defendant, collector of internal revenue, to recover corporation income and excess-profits taxes and interest in the sum of $6,898.70, alleged to have been erroneously and illegally collected from the plaintiff for the taxable year 1917. A jury trial was waived, and the case was heard before the court on the pleadings and proofs. From these we find the following facts:

The People's Coal Company and the Snowdon Coke Company were affiliated corporations during the taxable year 1917. During all that period the People's Coal Company owned all the capital stock of the Snowdon Coal Company except 2.8 per cent. thereof owned by one Isaac Taylor. The People's Coal Company was organized in 1901 and had acquired a large acreage of coal lands in the vicinity of Brownsville, Pa. In October of 1913 that company caused the incorporation of the Snowdon Coke Company and conveyed to the Snowdon Coke Company all of its coal lands in consideration of receiving all of the stock of the Snowdon Coke Company, of which stock it conveyed 2.8 per cent. to Isaac Taylor. During the year 1917 the two companies had the same directors with the exception of one person, W. T. McKnight, who was a director of the Snowdon Company and not of the People's Coal Company. The same persons, in one capacity or another, who were common directors in both companies, served as officers of the two companies. The main offices of both companies in the taxable year were located in the same rooms in the Conestoga Building, Pittsburgh. The office help carrying on the business of both companies consisted of an auditor, bookkeeper, stenographer, telephone operator, were employed and paid by the People's Coal Company; the books and records of both companies were kept by these employees. The raw materials and supplies for the Snowdon Company were purchased, all of its sales were made, all of its accounts were collected, through this Pittsburgh office. During the year 1917 the salaries and expenses of the Pittsburgh office amounted to $12,995.54, and were paid entirely out of the funds of the People's Coal Company. That company also employed men to trace loaded and empty cars

from the plant of the Snowdon Company, paid their salaries, and the salaries of the plant engineer, Steele, of the Snowdon Company. The People's Coal Company's income in 1917 was derived chiefly from securities owned by it in the Snowdon Company. It did not mine coal, had sold all of its coal acreage to the Snowdon Company; and the Snowdon Company was mining coal, manufacturing it into coke, and selling it. On March 30, 1918, the Snowdon Company filed its corporation income tax return for the calendar year 1917, on the basis of which return a tax in the sum of $155,699.19 was assessed and paid. The People's Coal Company likewise filed its income and profits tax return for the year 1918.

On September 1, 1920, the Commissioner of Internal Revenue notified the People's Company that from the facts presented, it appeared that that company was affiliated with the Snowdon Company during the taxable year 1917, and requested a consolidated excess-profits tax return involving the two companies to be filed for the calendar year 1917. This return was filed, with the result that thereafter the Commissioner of Internal Revenue determined that the two corporations were not affiliated, and then later determined that the Snowdon Company should pay an additional sum of $125,417.02 as a part of its tax for the calendar year 1917. This amount was duly assessed on the Commissioner's list for 1921. A claim for abatement dated June 1, 1921, for this amount was filed by the Snowdon Company. This claim was allowed for $119,457.31, and rejected for $5,959.71, which was paid by the plaintiff along with interest thereon in the sum of $938.99, making a total amount of $6,898.70, for which a claim for refundment was duly filed by the Snowdon Company before this suit was brought. The Snowdon Company was notified by letter of August 21, 1926, that its claim for refundment would be rejected, because the Snowdon Company was not affiliated with the People's Company.

In 1927, under authority of the Pennsylvania statutes, the plaintiff purchased all the assets, franchises, and property, real, personal, and mixed, of the Snowdon; and the corporate assets, franchises, and property, real, personal, and mixed, of the two corporations, were merged under authority of the said Pennsylvania statutes. Thereafter, by proper corporate proceedings, the People's Company changed its name to the Brownsville Coal & Coke Company, the name in which this suit is brought.

From these facts, we conclude as a matter of law that the People's Coal Company and the Snowdon Coke Company were affiliated companies within the meaning of the statutes with reference to the filing of consolidated return, and that for the taxable year 1917 the two corporations were entitled to file consolidated returns.

We further find that from said consolidated returns the defendant erroneously and illegally collected from the plaintiff's predecessor, the Snowdon Company, excess-profits tax in the sum of $4,208.33, for which amount judgment should be rendered for the plaintiff, with interest. An order for judgment may be submitted accordingly.

### Discussion.

The facts of this case present for discussion two questions:

(1) Were the two companies, People's Coal Company and Snowdon Coke Company, affiliated companies during the taxable year 1917 under the regulations and statutes.

(2) What is the correct method of computing excess-profits tax under the regulations on a consolidated return.

On the first proposition, the Taxing Act of 1917 (40 Stat. 300), was silent in regard to consolidated and affiliated returns; but the Commissioner, under authority granted him to make reasonable rules and regulations for the enforcement of that act, provided in article 77 of Regulation 41, as amended by Treasury Decisions 3389, as follows:

"Art. 77. When affiliated corporations or partnerships must furnish information as to inter-company relations.—For the purpose of the excess-profits tax, every corporation or partnership will describe in its return all its intercompany relationships with other corporations and partnerships with which it is affiliated, and will furnish such information in relation thereto as will enable the Commissioner of Internal Revenue to compute the amount of the tax properly due from each corporation or partnership on the basis of an equitable and lawful accounting.

"For the purpose of this regulation a corporation or partnership is affiliated with one or more corporations or partnerships (1) when such corporation or partnership owns directly or controls through closely affiliated interests or by a nominee or nominees all or substantially all of the stock of the other or others or (2) when substantially all of the stock of two or more corporations or the business of two or more partnerships is owned

by the same interests and in both (1) and (2) it is found that (a) such corporations or partnerships are engaged in the same or a closely related business, or (b) one corporation or partnership buys from or sells to another corporation or partnership products or services at prices above or below the current market, thus affecting an artificial distribution of profits, or (c) one corporation or partnership in any way so arranges its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital.

"The owning or controlling of 95 per cent. or more of the outstanding voting capital stock (not including stock in the treasury) at the beginning of and during the taxable year will be deemed to constitute an affiliation within the meaning of the statute, provided the corporations or partnerships were engaged in the same or a closely related business or there were such intercompany transactions as are specified in clauses (b) and (c) in the preceding paragraph."

Section 1331 of the Revenue Act of 1921 (26 USCA § 1067) gave legislative sanction to this regulation and the filing of consolidated return for excess-profit tax purposes during the year 1917.

■ In the instant case, the People's Coal Company owned directly substantially all the capital stock of the Snowdon Company, thereby fulfilling two requisites of the regulation and statute. The plaintiff also brought itself within the requirements of the provisos of the statute and the regulations, namely, that the two corporations were engaged in the same, or closely related business. In addition to that, in the operation of the office and the sales of the products of the Snowdon Company through the officers and employees paid by the People's Company, there was effected an artificial distribution of profits and such an arrangement of the financial relationships between the two corporations as to assign to the Snowdon Company a disproportionate share of net income or invested capital.

Now, it seems to us that the requiring and permitting of consolidated returns apply to cases where a business should be taxed as a unit, even though for business reasons the agencies of two or more corporations are made use of in transacting the business involved. In this case the business conducted was mining of coal, the manufacture of coke, and the sale of the coal and coke products.

It was arranged that one corporation should own and operate the plant; that the other should own the capital shares of the company and furnish the officers and office force necessary to carry on the overhead business, the mining of coal, the manufacture of coke, and the distribution of these products in the markets. This is surely one business, and the fact that two corporations were employed, rather than one, does not make of it two separate businesses. In the instant case there is one economic unit in spite of the fact that there are two corporations involved.

Our attention has been drawn to the decision of the Court of Claims on March 11, 1929, in the case of Montgomery Cotton Mills, Inc. v. U. S., 67 Ct. Cl. 169, holding that the Montgomery Cotton Mills, Inc., and the First National Bank of Montgomery, which owned all the stock of the Montgomery Cotton Mills, Inc., were not entitled to file a consolidated tax-return. That decision does not cover the facts of this case. The two corporations were not incorporated for carrying on business as a single economic unit; the bank merely owned all the capital stock of Montgomery Cotton Mills, Inc. The Court of Claims held that there was nothing in the evidence or facts to show that the companies came within the proviso of the statute and the regulations.

In the instant case the facts absolutely meet the conditions of the statutes and the proviso upon which consolidated returns are to be filed. The Snowdon Company was merely the operative department of the business, and the People's Coal Company was the accounting branch, the sales branch, the sales agent, the credit department, and the treasury. Under the financial arrangements between the two corporations, neither one, as we look at it, could properly function without the other. When later they merged into one corporation, they were still doing the same business that they did when they had two corporate entities to carry on the business. We can see no escape from the conclusion that the two companies were affiliated companies within the meaning of the statute and entitled to file consolidated returns.

■ The next question involved is the question of computation. The plaintiff, while contending for affiliation in the matter of filing consolidated returns, desires still in the course of its computation to take advantage of the separate corporate entity of the two companies involved. We think this is error. We believe that under the revenue statutes the computation must be based strictly on the

consolidated returns. In other words, the activities of the two corporations, so far as the computation of excess-profits taxes is concerned, are to be considered and computed as the activities of a single taxable entity. The interest, for instance, paid by both of the corporations to outside parties, is to be deemed interest paid by the consolidated entity; and the determination of the disallowance of such interest from the consolidated net income is based on a single factor, namely, the consolidated invested capital at the close of the year. Correspondingly the restoration to consolidated capital is a proportion based on the disallowance as above computed, as compared with the total interest paid by the group to outside parties. The method of computation suggested by the plaintiff ignores this unity of capital. We cannot unite the companies for the purpose of securing the benefits of a consolidated return and then again segregate them for the purpose of computing the disallowance of interest and restoration to invested capital. These two corporations in the computation of this tax should not be considered as a segregation of parts, but rather as a unified welded entity. When we once determine that the companies are so closely related as to permit the filing of consolidated returns, then, of course, all inter-company transactions must be eliminated.

Next, turning to the amount of the deduction of a percentage of invested capital from income, before applying the excess-profits tax rates, the plaintiff claims a deduction of 8 per cent.; the defendant claims that the correct deduction is 7 per cent. of the invested capital. The provisions relating to excess-profits tax deduction for the year 1917 are contained in sections 203, 204, and 205 of the Revenue Act approved October 3, 1917 (40 Stat. 304). From these acts, we conclude that if neither company had been in existence before the consolidation, it would have been entitled to 8 per cent.; but in view of the fact that one of the corporations involved was in existence before, although it had no income, and the second corporation was substantially a continuation of the first, it is evident to us that the consolidated entity is entitled in 1917 to the same percentage, which the net income of representative corporations in the same trade or business was of their invested capital. The Commissioner determined the rate of 7 per cent.; and the plaintiff filed no complaint with the Secretary of the Treasury under section 205(a) of the excess-profits law (40 Stat. 304). We believe that the Commissioner's determination of the percentage to be used as a deduction under the provisions of section 203 of the Revenue Act is a discretionary act on his part and as such is not subject to judiciary review.

Let a judgment for $4,208.33, with interest, be entered in favor of the plaintiff in accordance with this opinion.