## TRUSTEES FOR OHIO & BIG SANDY COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2992.

Circuit Court of Appeals, Fourth Circuit.
Sept. 19, 1930.

Lyle T. Alverson, of New York City (Wayne Johnson, of New York City, and Buford Tynes, of Huntington, W. Va., on the brief), for petitioners.

Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and R. C. Shaw, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before PARKER, Circuit Judge, and GRONER and SOPER, District Judges.

784

PARKER, Circuit Judge.

This is a petition by the Trustees of the Ohio & Big Sandy Coal Company, a Virginia corporation which was dissolved on December 29, 1917, to review a decision of the Board of Tax Appeals which approved a deficiency assessment against the corporation of excess profits taxes amounting to $7,119.36 for the year 1917. A number of questions were considered by the Board which are not brought before us by the petition, and we need not consider them. The questions presented to us are: (1) Whether the assessment is barred by the statute of limitations; (2) whether there was error in holding that the Ohio & Big Sandy Coal Company was affiliated with the United Thacker Coal Company during the period from April 30 to December 20, 1917, and in computing the excess profits tax on the basis of a consolidated return by the two corporations; (3) whether in the consolidated return a deduction of $3,000 should be made for each of the affiliated corporations or only one deduction on behalf of all; and (4) whether an item of $1,019,342.24 should have been deducted from the invested capital of the United Thacker in arriving at the consolidated invested capital of the corporations.

On the question of the statute of limitations, it appears that the last day allowed for filing the return of the corporation was July 1, 1918, and that the letter giving notice of the deficiency was written on August 17, 1925. On January 16, 1923, January 8, 1924, and November 24, 1924, written waiver agreements were executed, which taken together extended the period of limitations to March 15, 1926. These waiver agreements were duly signed by the taxpayer and filed in the office of the Commissioner, where they were signed in his name, although not in his handwriting. The petitioners contend that these do not operate to extend the statute because the first of them was not signed until after the expiration of the three-year limitation period prescribed by the act of 1916 and because none of them was signed in person by the Commissioner.

■ It is true that section 14(a) of Revenue Act of 1916 (39 Stat. 772) prescribes a three-year period of limitation within which the Commissioner may make an additional assessment; but the bar of this statute was clearly lifted by the Revenue Act of 1921, § 250(d), 42 Stat. 227, which provided that "the amount of income, excess-profits, or war-profits taxes due under any return made * * * under prior income, excess-profits, or war-profits tax Acts * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this act or under prior income, excess-profits, or war-profits tax Acts * * * shall be begun, after the expiration of five years after the date when such return was filed. * * *" That the limitation prescribed by this section controls as to the assessment and collection of taxes levied under prior acts, see W. P. Brown & Sons Lumber Company et al. v. Commissioner (C. C. A. 6th) 38 F.(2d) 425; Regla Coal Co. v. Bowers (D. C.) 37 F.(2d) 373; Aiken v. Com'r (C. C. A. 8th) 35 F.(2d) 620; Greylock Mills v. Com'r (C. C. A. 2d) 31 F.(2d) 655.

As the waivers in question were executed prior to the expiration of the statutory period prescribed by the act of 1921, which is applicable, it is unnecessary to consider whether such waivers would have extended the period if it had expired prior to their execution. See Joy Floral Co. v. Commissioner, 58 App. D. C. 277, 29 F.(2d) 865; W. P. Brown & Sons Lumber Co. v. Commissioner, supra.

■ As to the signing of the written waivers by the Commissioner, all that is required by the statute is that the Commissioner and taxpayer consent in writing to the extension. This written consent was given in the name of the Commissioner and was acted upon by him. While the signature of the Commissioner thereto attached is not in his handwriting, there is nothing to show that it was not placed there by his authority, and the presumption is that it was. In requiring that the Commissioner give his consent in writing to a waiver of this character, it was not intended that to render it valid he must personally affix his signature thereto. Where the waiver is signed in his name by an employee in his office acting under his authority, this would seem to be a sufficient compliance with the statute. Greylock Mills v. Commissioner, supra. But, apart from this, the taxpayer, by the execution of the waiver, has obtained delay in the assessment of additional taxes and a more deliberate and thorough consideration of the questions involved. Under such circumstances the taxpayer ought not be heard to urge the bar of the statute,

which it expressly agreed to waive. Liberty Baking Co. v. Heiner (C. C. A. 3rd) 37 F. (2d) 703; Loewer Realty Co. v. Anderson (C. C. A. 2d) 31 F.(2d) 268.

Petitioners contend that there is no authority in the law for treating corporations as affiliated and requiring a consolidated return under the act of 1917. It is true that that act, while imposing excess profits taxes, did not provide expressly for consolidated returns. The purpose of the act, however, was to impose such taxes on the excess profits of business enterprises, and it was not contemplated that the fact that a corporation might conduct its business through subsidiaries or in connection with other corporations should enable it to escape the tax or avail itself of a lower rate than would be required if this were not true. Articles 77 and 78 of Treasury Regulations 41 accordingly provided for consolidated returns by affiliated corporations, and section 1331 of the Revenue Act of 1921 (26 USCA § 1067) expressly provided, as declaratory of the meaning of the act of 1917, that consolidated returns should be required of affiliated corporations and that excess profits taxes should be imposed on them on the basis of such returns. That section is as follows:

"Sec. 1331. (a) That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

"(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: Provided, That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital. * * *

"(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917."

We think there can be no doubt of the validity of the regulations under the act of 1917 or of the constitutionality of section 1331 of the act of 1921. National Candy Co. v. U. S., 67 Ct. 75, Certiorari denied, 280 U. S. 582, 50 S. Ct. 33, 74 L. Ed. 631; Brownsville Coal & Coke Co. v. Heiner (D. C.) 38 F.(2d) 248; U. S. v. Whyel (D. C.) 19 F.(2d) 260, affirmed (C. C. A. 3d) 28 F.(2d) 30.

The point is made that the affiliation, within the meaning of the statute, of the Ohio & Big Sandy and the United Thacker was not shown; but the Commissioner found that such affiliation existed, and there is nothing in the record to invalidate his finding, which is prima facie correct. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Brooks v. Com'r (C. C. A. 4th) 35 F. (2d) 178; Avery v. Com'r (C. C. A. 5th) 22 F.(2d) 6, 55 A. L. R. 1277. The point that affiliation was not shown during the entire taxable year is equally lacking in merit. The only reasonable interpretation of the statute is that where affiliation exists during a substantial portion of the year, a consolidated return covering that period is required. Fidelity National Bank v. Commissioner (C. C. A. 8th) 39 F.(2d) 58. We think, also, that it is perfectly clear that, as the statute requires that the tax of affiliated corporations shall be computed on the basis of a consolidated return, only one deduction of $3,000 should be allowed, and not a separate deduction of that amount for each of the affiliated corporations.

On the point as to the deduction of the item of $1,019,342.24 from the invested capital of the United Thacker Coal Company, however, we think that the position of petitioners is well taken. The actual cash value on January 1, 1914, of the property paid in for stock of the corporation prior to that date was $4,000,800 for which stock of the par value of $4,000,800 had been issued to the Ohio & Big Sandy Coal Company. Subsequently United Thacker expended on account of the property $750,172.96; and, of course, in the computation of invested capital it was entitled to count only the $4,750,972.-76. Revenue Act of 1917, c. 63, § 207, 40 Stat. 306. Its books, however, showed the value of its property as $5,770,315.20, a difference of $1,019,342.24. This difference was shown on the balance sheet as a "surplus def-

icit," but this "surplus deficit" is found by the Board and conceded by the parties to represent "the difference between the book value of the properties of the United Thacker and the amount allowable for invested capital in respect to said properties."

In arriving at the consolidated invested capital of the affiliated corporations, the Commissioner deducted this $1,019,342.24 "surplus deficit" from the allowable paid-in invested capital of $4,000,800, leaving a balance of $2,981,475.76, which he allowed as invested capital; and the Board of Tax Appeals approved this deduction. In this, we think there was error. The so-called "surplus deficit" was not a deficit at all, but merely the difference between the value of the property of the United Thacker as shown by its books and the amount allowable as invested capital. When the invested capital was put down as $4,000,800, this excess of book value had been eliminated, and there was no reason to subtract it again. If there had been no excess of book value over actual cash value as of January 1, 1914, there would have been no such "surplus deficit" as that which the Commissioner deducted; and certainly a corporation is in no worse position, from the standpoint of invested capital, because its property has increased in value and this increase is shown on its books.

The error in this deduction is made manifest by its result in the consolidated balance sheet. The Commissioner, after allowing the Ohio & Big Sandy $4,000,800 for investment in the stock of the United Thacker, and allowing United Thacker invested capital of only $2,981,475.76, eliminated $4,000,800 "to prevent duplication through inter-company holdings." But it is clear that the elimination of $4,000,800 would be proper to prevent "duplication" only where that amount had been credited to each of the corporations as investment. It is said that it is the investment of the Ohio & Big Sandy in United Thacker which is to be eliminated. This would come with more force if through losses of United Thacker the original investment had decreased in value. It appears, without question, however, that instead of decreasing, the original investment had increased in value. The result of the method adopted by the Commissioner is that, although Ohio & Big Sandy originally invested $4,000,800 in United Thacker and although United Thacker received property of that value, the affiliated corporations are to be credited with this investment at only $2,981,-475.76, and this because the original investment has so increased in value that it is carried on the books at a figure $1,019,342.24 in excess of the original investment. This is clearly erroneous.

Our conclusion, therefore, is that there was error in deducting the $1,019,342.24 from the $4,000,800 invested capital of the United Thacker Coal Company in arriving at the consolidated invested capital of the affiliated corporations, and the case will accordingly be remanded to the Board of Tax Appeals for further proceedings not inconsistent with this opinion.

Reversed and remanded.