## STERN BROS. & CO. v. BURNET, Commissioner of Internal Revenue.

### No. 9046.

Circuit Court of Appeals, Eighth Circuit.

July 13, 1931.

Paul R. Stinson, of Kansas City, Mo. (I. P. Ryland, Arthur Mag, Roy B. Thomson, and Leslie C. Thurman, all of Kansas City, Mo., on the brief), for petitioner.

A. G. Divet, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, and S. Dee Hanson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Stanley A. Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

STONE, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals affirming a deficiency redetermination of taxes of the petitioner. There is no dispute that the amount of taxes claimed by the Government is proper. The only controversy is whether the assessment and collection of this deficiency is barred by limitations. It is conceded that it is so barred unless extended by two waivers. Therefore the real issues are as to the term of extension by these two waivers and as to the validity and binding effect of the waivers themselves.

Petitioner contends that the waivers are invalid for various reasons to be hereinafter noted, but that, even if valid, they do not suffice to extend the term to include the assessment and collection. Whether they do so extend the term or not depends upon the construction of the last sentence of the second waiver. The first waiver is as follows:

"January 9, 1924
(Date)
"Received
"Feb. 19 1924
"Special Assessment Section

"Income and Profits Tax Waiver.

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Stern Bros. & Co. of Kansas City, Mo. and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said corporation for the year 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes', approved August 5, 1909.

This waiver is in effect from one year from the date it is signed by the taxpayer.

"Stern Brothers & Company,
"[Corporate Seal]          Taxpayer,
              "By Sigmund Stern, Pres.
              "By Morris Stern, V. P.
       "D. H. Blair, Commissioner.

"If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed."

The second waiver is as follows:

              "January 19, 1924
                (Date)
              "Received
              "Feb. 19 1924
              "Special Assessment Section

       "Income and Profits Tax Waiver.

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Stern Brothers and Company of Kansas City, Mo., and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return by or on behalf of the said Stern Brothers and Co. for the year 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes', approved August 5, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned.

"Stern Brothers & Company,
"[Corporate Seal]          Taxpayer,
              "By Sigmund Stern, Pres.
              "By M. Stern, V. P.
       "D. H. Blair, Commissioner MB
       "Distribution Center
       "Jan. 22, 1924
        "P. U. & P. S. Section

"If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corpo-ration, in addition to which, the seal, if any, of the corporation must be affixed."

■ The controverted question as to the proper construction of the last sentence of the second waiver is whether it served to extend the time for one year after the expiration of the statutory period, as extended by the first waiver. The argument is that the five-year limitation period had not expired at the time the second waiver was made, and therefore there was no need nor occasion for a further extension of that period by any previous or existing waiver, and that it was not the intention of the parties to make such additional extension, but that the sentence should be understood as meaning only that the assessment and collection "may still be made 'within' the period as extended by any waivers then on file." Such a construction as contended for does obvious violence to the language here used and to the application of that language to the situation. Taking the language alone, of the above sentence, it is clearly in the alternative, one of which is that it shall remain in effect "for a period of one year after * * * the statutory period of limitation as extended by any waivers already on file with the Bureau." No other meaning can be given this language except that the above waiver not only extended the period for one year after the statutory period of limitation, but for one year after any existing extension of the statutory period by waiver on file with the Bureau. When the application of this wording to the situation is considered, the meaning of the above sentence is further sustained. This situation is that there was actually on file with the Bureau a waiver which extended the period for one year after the statutory limitation. Not only is it significant that the language of the first and second waivers are different in this particular, but there could be no possible purpose in the second waiver if given the meaning contended for by the petitioner, since it would make the extension only the same as the first waiver had already done.

■ The petitioner's main contention is that the waivers are not effective, as such, and several grounds are urged in support of this view. The first of these grounds is that the Commissioner never notified the taxpayer that he had signed or accepted the first waiver or even that he had received it. The theory as to this is that the waiver is a bilateral contract and that it is a condition of such contracts that an acceptance of an offer must be communicated. This view is met by decisions of the Supreme Court which hold that such

a waiver is not a contract, Aiken v. Burnet, 282 U. S. 277, 281, 51 S. Ct. 148, 75 L. Ed. ——; Florsheim Bros. Co. v. U. S., 280 U. S., 453, 466, 50 S. Ct. 215, 74 L. Ed. 542, and it has been directly decided by the Court of Appeals for the Second Circuit that no such notice is required in connection with waivers of this character, Greylock Mills v. Commissioner, 31 F.(2d) 655, 657.

█ Another ground is that the demand of the second waiver operated as an affirmative rejection of the first waiver. The language of the last sentence of the second waiver conclusively meets such a contention.

█ Another ground is that the waivers were made in consideration of the hearing of an appeal which the Commissioner later refused to hear, and, as the consideration for the contract thus failed, therefore, the contract represented by the waiver was ineffective. This contention is met by the above citations to the effect that such waivers are not contracts, and, as to the matter of consideration, more particularly, by two decisions of the Second Circuit directly holding that no consideration is necessary to support such a waiver. Loewer Realty Co. v. Anderson, 31 F.(2d) 268, 270; Greylock Mills v. Commissioner, 31 F. (2d) 655, 657.

█ A further ground is that whether the first waiver be construed as a bilateral contract, or merely as a one-sided instrument to be signed by the taxpayer alone, it never became effective, for the reason that it was conditionally delivered by the taxpayer, and the condition upon which it was to take effect, if at all, never happened; the condition being that the Commissioner would hear the taxpayer's first appeal. The evidence clearly shows that no such condition was attached to the waiver. The facts as shown by the evidence and clearly understood by both parties at the time are shown in an extract from a letter of the Commissioner transmitting the form of the first waiver to petitioner. That extract shows that the petitioner had, of its own volition, submitted an appeal to the Commissioner; that this created a situation in which the delay incident to giving consideration to the appeal might jeopardize the assessment and that the waiver was to protect this situation. This cannot be tortured into a promise by the Commissioner that he would hear the appeal if the waiver were made. The evidence shows that the appeal then on file was not considered because not in proper form, but that the defects therein were called to the attention of petitioner in the letter transmitting the second waiver, and that, in compliance with the suggestions in that letter, another appeal was prepared by petitioner and transmitted to the Commissioner, and that conferences later took place, in connection therewith, between petitioner and officials of the Bureau. With this revelation from the record, there is no basis for any claim that this first extension should be held invalid because that particular appeal was not passed upon.

█ It is contended by petitioner that the burden is on the Commissioner to show the validity of the two waivers and that the Commissioner has failed to show that the first waiver was on file in the Bureau at the time the second waiver was executed, or that either waiver was properly signed by the Commissioner, or under his authority. Since the Commissioner relies upon a waiver to avoid the statutory limitations, it may be assumed that the burden is upon him to show a waiver which could have that effect, and that this requirement could be met only by the showing of a waiver properly executed by the Commissioner, and, in this instance, that the first waiver was on file in the office of the Bureau at the time the second was executed, since the second refers only to a waiver then on file. While this burden is upon the Commissioner, the character or amount of proof necessary to satisfy this burden is another matter. Here the proof is sufficient to make out, at least, a prima facie case of the receipt of the first waiver before the letter containing the form for the second waiver was mailed by the Commissioner. This prima facie case is made out by two matters, one a presumption, and the other affirmative evidence. The presumption intended is that the evidence shows both that the first waiver was mailed from Kansas City to the Commissioner, at Washington, five days before the Commissioner mailed the second waiver, and that it required no more than that time for the transmission of mail between those two points. Therefore the presumption would be that the first waiver had been received in due course of mail. The affirmative evidence intended is that the second waiver, differing in this respect from the first waiver, refers to an existing waiver "already on file with the Bureau," and this first waiver is the only one which could possibly have been on file. It is difficult to explain this difference in the two waivers except on the basis of the presence of the first waiver in the files of the Bureau at the time the second waiver was sent by the Commissioner.

■ The contention as to the proper signature is met by the waiver itself, which contains the signature "D. H. Blair, Commissioner," and the presumption of the verity of the acts of public officials. United Thacker Coal Co. v. Commissioner, 46 F.(2d) 231, 233 (C. C. A. 1); Trustees for Ohio & Big Sandy Coal Co. v. Commissioner, 43 F.(2d) 782, 784 (C. C. A. 4).

■ In general, it may be said as to this controversy and those of a related character that a waiver of this kind is "essentially a voluntary, unilateral waiver of a defense by the taxpayer," as stated in Stange v. Burnet, 282 U. S. 270, 276, 51 S. Ct. 145, 75 L. Ed. 335; also see Florsheim Bros. Drygoods Co. v. U. S., 280 U. S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542; that the signature by the Commissioner is a statutory requirement made, not for contract purposes, but "to meet exigencies of administration," as said in Aiken v. Burnet, 282 U. S. 277, 281, 51 S. Ct. 148, 75 L. Ed. 339; also see Stange v. Burnet, 282 U. S. 270, 276, 51 S. Ct. 145, 75 L. Ed. 335; Burnet v. Railway Equipment Co., 282 U. S. 295, 298, 51 S. Ct. 137, 75 L. Ed. 349; Florsheim Bros. Co. v. U. S., 280 U. S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542; Greylock Mills v. Commissioner, 31 F.(2d) 655, 657 (C. C. A. 2); and where the taxpayer, by the execution of the waiver, has obtained delay in the assessment of additional taxes, and a more deliberate and thorough consideration of the questions involved, and where the waiver is regular in form and in the possession of the proper governmental bureau, every presumption should be taken in favor of its validity and binding effect, and the burden is upon the taxpayer to show such invalidity or ineffectiveness, see Trustees for Ohio & Big Sandy Coal Co. v. Commissioner, 43 F.(2d) 782, 784 (C. C. A. 4).

The decision of the Board of Tax Appeals was in all respects correct, and the petition for review should be, and is, dismissed.