**MONARCH MILLS v. JONES, Collector of Internal Revenue (two cases).**

District Court, W. D. South Carolina.
Aug. 17, 1931.

J. Ashby Sawyer, of Union, S. C., and H. P. Cochran, Frederick S. Winston, and Harry Friedman, all of Washington, D. C., for plaintiff.

Joseph A. Tolbert, U. S. Dist. Atty., of Greenvill, S. C., and Eldon O. Hanson, of Washington, D. C., for defendant.

WATKINS, District Judge.

The issues of both law and fact in the above-styled actions are so closely related that they may properly be, and for the sake of brevity will be, disposed of in one opinion. The decision has been delayed, first awaiting the production of briefs, and later because of certain cases known to be pending in the courts of last resort, the decisions of which it was thought might be conclusive of the issues here involved. These cases have since been decided, and I think have conclusively set at rest the questions upon which there was originally a divergence of opinion among the lower courts.

In one of these cases Monarch Mills has sued as successors to Monarch Cotton Mills for the recovery of $118,794.70 claimed to have been illegally collected as income and profits taxes for the calendar year 1917. In the other case, Monarch Mills as successors to Lockhart Mills has sued for the recovery of $42,476.59 alleged to have been illegally collected as income and profits taxes for the same year. In each case interest is sought to be recovered in addition to and upon the principal amounts from the dates of their respective payments. The cases, under written stipulation of the parties, were tried before me without a jury. Only a few witnesses were sworn on behalf of plaintiff and none on behalf of defendant. Much testimony was admitted, however, by stipulation, including tax returns, correspondence, etc. A considerable portion of this testimony was by way of photostatic copies of documents of the office of the Commissioner of Internal Revenue, and, as usual with this type of testimony, the court experienced considerable difficulty in deciphering documents offered in this style both because such copies are almost invariably blurred to some extent and also because the copies are made upon dark paper and, therefore, more difficult to decipher.

There is no conflict in the testimony. The pertinent facts may be recapitulated as follows: Prior to October 1, 1917, there had existed for some time the two separate South Carolina cotton manufacturing corporations, Monarch Cotton Mills and Lockhart Mills. The stock of these corporations was to a considerable extent owned and controlled by the same stockholders and to some extent under the same management. After negotiations, it was decided to consolidate the corporations under the name of Monarch Mills. It is unnecessary for the purposes of this opinion to recapitulate the terms of the consolidation. It is sufficient to say that it was effected in a manner that was evidently satisfactory to the stockholders of these corporations. The consolidation was completed at the end of the year 1917 and both Monarch Cotton Mills and Lockhart Mills ceased operation on December 31, 1917, although they were not finally dissolved by surrender of charters until May 18, 1918. The manufacturing plants and their operation, however, were completely taken over by the Monarch Mills on January 1, 1918. For some time prior to 1917 both Monarch Cotton Mills and Lockhart Mills had made their tax returns to the government on a fiscal year basis, the anniversary date being September 30. For the fiscal year 1917 as ending on September 30, Lockhart Mills filed its return on November 16, 1917, and Monarch Cotton Mills filed its return on November 19, 1917. Inasmuch as each of these corporations ceased business on December 31, 1917, a return called a "final return" was filed for the period, October 1, 1917, to December 31, 1917, by each of the mills in question. These returns were filed on March 27, 1918. On this same date an original excess profits tax return for the fiscal year ended September 30, 1917, was filed for each of said corporations. Upon an audit by the Commissioner of Internal Revenue, he determined that these companies were not authorized to use a fiscal year accounting period, and thereupon he required the corporations to make an accounting for tax purposes on a calendar year basis. As this point it should be remarked that there appears in the rec-

ord nowhere any explanation of the reason for the commissioner's action in requiring this change from a fiscal to a calendar year basis. In the face of the law and the custom that had grown up and been recognized by the commissioner in previous years and without such explanation, I am inclined to regard the action of the commissioner as unjust even though the evidence falls short of showing it to be illegal. However, it appears that, after the requirement was made, a re-audit was had, and the commissioner levied upon Lockhart Mills an additional assessment in the amount of $49,382.17, which, upon further audit, was reduced to $42,476.59, and upon Monarch Cotton Mills an additional assessment in the amount of $132,732.52 which, upon further audit, was reduced to $103,966.-01. The additional assessment against Lockhart Mills was levied in April, 1923, and paid on April 28, 1924, and the additional levy on Monarch Cotton Mills was made in March, 1923, and paid on August 20, 1925. In addition to the levy, the last-named corporation paid interest on the amount assessed in the sum of $14,828.69, which, added to the principal amount of $103,966.01, makes up the aggregate of $118,794.70, the principal amount sued for on behalf of Monarch Cotton Mills. On February 1, 1923, Monarch Cotton Mills filed an income and profits tax waiver consenting to a determination, assessment, and collection of the amount of income and profits taxes due under any return made by or on behalf of said company for the year 1917 irrespective of any period of waiver, and on March 29, 1923, it filed with the collector a claim for abatement of the assessment of the taxes levied in March, 1923. On January 27, 1923, and February 12, 1923, Lockhart Mills filed a like income and profits tax waiver of the statute of limitations with respect to the collection and assessment of taxes for 1917, provided assessment was made before March 1, 1924. After the payment of the taxes assessed, Monarch Mills prepared under date of February 12, 1926, on Form 843 a claim of abatement of tax assessed against Monarch Cotton Mills in the sum of $250,000, stating: "That claims for refund are being prepared in detail on the following bases: (1) Adjustment of fair market value as of March 1, 1913. (2) Adjustment of depreciation. (3) Loss of useful value. (4) Obsolescence. (5) Restoration of invested capital. (6) Consideration under special assessment. (7) And other discrepancies in the return." Monarch Mills, on behalf of Lockhart Mills, on February 12, 1926,

prepared on Form 843 a claim for refund in the sum of $150,000 for the same specified reasons as outlined in the case of Monarch Cotton Mills. I have been unable to find in the record the detailed claims for refund filed in connection with these applications. I do find, however, that the commissioner, after examining the claims for refund, stated that the bases of these claims are various statutory adjustments and special assessments set forth in a summary manner and that the only data submitted in support of the statement of Monarch Cotton Mills' claim, which covered the restoration of invested capital, was on account of paid-in surplus in connection with the incorporation of Lockhart Power Company. The record shows that from time to time other claims were filed by the corporations objecting to the assessment and collection of the tax as barred by the statute and because the waivers were alleged to have been filed after the expiration thereof. The record involves considerable additional testimony to that outlined, but I deem it unnecessary further to recapitulate here.

In argument counsel for plaintiff summarized its contentions as follows: (1) That the assessment and collection of the taxes in question were made after being barred by the statute, being at a period more than five years after the returns were filed. (2) That the tax had been erroneously assessed on a calendar year basis, whereas it should have been computed on the basis of a fiscal year ending September 30, 1917, and for the three months ending December 31, 1917. (3) That in the computation of the tax, especially for the three months' period, plaintiff was entitled to the full invested capital for that period rather than to one-fourth of the invested capital.

The government contested these claims and further raised the issue that the Monarch Mills was not the proper party to sue. It is the contention of the government that timely waivers operated to prevent the bar of the statute of limitations; that the taxpayer cannot now question the act of the commissioner in changing the taxpayer's accounting period from a fiscal to a calendar year basis for the reason that the question had not been presented to the commissioner in a claim for refund; and that, after the accounting period had been changed, the taxpayer made no objection until this suit was commenced. It is the contention of the government further that even if the fiscal year basis be adopted, there is still a substantial deficiency and that the taxes have been unpaid.

██ We will first consider the question of plaintiff's legal capacity to maintain these actions since, if that be denied, the suits must be dismissed. Defendant's contention is based upon the provisions of section 3477, Revised Statutes, 31 U. S. Code § 203 (31 USCA § 203). This statute has been frequently before the Supreme Court for construction, and it has been held that there are certain general exceptions to be recognized because not within the evils at which the statute aimed. Its purpose is to prevent frauds upon the treasury. As said in the case of Seaboard Air Line Ry. v. United States, 256 U. S. 655, at page 657, 41 S. Ct. 611, 612, 65 L. Ed. 1149: "We cannot believe that Congress intended to discourage, hinder or obstruct the orderly merger or consolidation of corporations as the various states might authorize for the public interest." It is true that the present statute of the state of South Carolina, relating to the mergers of corporations, was not enacted until 1925. The purpose of this statute, however, was rather to outline the method and provide certain remedies and rights for minority stockholders than to create a new law. Mergers in proper cases, of the character of the merger in this case, were recognized long before this statute was passed. It is significant that in tax matters themselves the Supreme Court has recognized the right of stockholders to receive stock dividends in the way of stock certificates for profits earned without subjecting the stockholder to the claim for a profit tax until the stock itself is sold. In the instant case, the new corporation took over all the assets of the parent companies and assumed all their liabilities. Both companies went out of existence before the taxes in question were finally paid, and the dealings of the government have been with the plaintiff, which itself paid every dollar of the taxes sought to be recovered. We think the case is clearly within the rule laid down in the Seaboard Air Line Case.

██ Next in order, we proceed to the consideration of whether the claims filed complied with the requirements of the statute and of the regulations promulgated by the commissioner. It should be remembered that the government can only be sued by its own consent and that one entitled to sue must comply strictly with the statutory requirements. Section 3226, Revised Statutes (as amended 26 USCA § 156), provides, among other things, that no suit shall be maintained for the recovery of any tax alleged to be erroneously or illegally assessed or collected or in any manner wrongfully collected "until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue according to the provisions of law in that regard and the regulations of the Secretary of the Treasury established in pursuance thereof." Pursuant to the authority vested in him, the Commissioner of Internal Revenue promulgated certain departmental regulations, among others, providing: "Article 1304. Claims for Refund by Taxpayers. —Claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax erroneously or illegally collected shall be made on Form 843. All facts relied upon in support of the claim should be clearly set forth in detail under oath." The obvious purpose of this was to give the commissioner an opportunity to correct errors before suit. The right to sue is not permitted unless and until the error has been specifically pointed out and demand made in form and detail sufficiently clear to call direct attention to the nature and grounds of the taxpayer's complaint. United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025. That literal compliance with the statutory requirements is demanded as a condition precedent to suit, see Tucker v. Alexander, 275 U. S. 228, at page 231, 48 S. Ct. 45, 72 L. Ed. 253. When filed, the suit must be upon a claim of the same and not a different nature from that shown in the claim for refund. Rock Island, etc., R. Co. v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188; Arizona Commercial Mining Co. v. Casey (D. C.) 32 F.(2d) 288; Feather River Lumber Co. v. United States, 66 Ct. Cl. 54, certiorari denied, 279 U. S. 837, 49 S. Ct. 251, 73 L. Ed. 984. I have gone over the record with great care and am thoroughly convinced, although the conclusion was reached with considerable reluctance, that the claims filed were insufficient to put the commissioner properly upon notice that the plaintiff intended to base its claim of error in fixing the calendar year as a basis for the refund. I am aware of the fact that taxpayers frequently found difficulty in a strict compliance with the requirements of the commissioner's regulations, especially in the earlier administration of the income tax laws as they existed at the time in question; but it is not permitted the court to question the wisdom of Congress in providing what shall be done as a condition precedent to maintaining a suit. Even if this question could now be raised, it could not avail in this case for the reason that I am unable to find where the corporations subject to this tax had proceeded to acquire any absolute or certain right to have their returns made and

audited upon a fiscal year basis. As above stated, the testimony indicates that, because of the custom previously established, it would have been fair to permit this to be done. I fail to find, however, that any previous application was made to or consent given by the commissioner for a fiscal year accounting during 1917.

Plaintiff further insists that both the assessment and the collection of the taxes in question were illegal and barred by the statute. First, it is insisted that the bar of the statute had arisen before the waivers were filed and that these were, therefore, void; second, that even if the waivers were valid when executed, they expired before assessment and collection, particularly the latter, were made. The facts, upon which plaintiff relies, have been so minutely detailed heretofore as to render it unnecessary to recapitulate them at this point. We think that in every particular the claims of plaintiff have been adversely decided in one or more of the later cases determined by the Supreme Court and our own Circuit Court of Appeals. Particularly in point are Florsheim Brothers Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; Trustees for Ohio & Big Sandy Coal Co. v. Commissioner of Internal Revenue, 43 F. (2d) 782 (4th C. C. A.) In these cases are discussed not only the earlier statutes but the various Revenue Acts adopted subsequent to 1917, the force and effect to be given to waivers, and the retroactive as well as instant and future effect of the subsequent Revenue Acts of 1921 (42 Stat. 227), 1924 (43 Stat. 253), and 1928 (26 USCA § 2001 et seq.). These cases will show, we think, that the waivers were filed in time and that neither the assessment nor the collection of the taxes in question were barred by the statute.

In view of what was said above as to the change required by the commissioner from a fiscal to a calendar year accounting basis, we have arrived at the conclusions herein reached with some degree of reluctance. Under the circumstances of the case, however, we are not permitted to go behind the law as we find it, and it is unnecessary for the purposes of the decision to discuss what amount of taxes would have been due under a fiscal year accounting basis if permitted to consider that question.

Judgment will be rendered for the defendant in both cases.