ANTHONY J. CINDRICH and STELLA CINDRICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cindrich v. Commissioner
Docket No. 11262-82.
United States Tax Court
T.C. Memo 1984-294; 1984 Tax Ct. Memo LEXIS 378; 48 T.C.M. (CCH) 252; T.C.M. (RIA) 84294; June 5, 1984. *378 Ralph E. Cindrich, for the petitioners. Michael A. Yost and Raymond N. McCabe (specially recognized), for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined the following deficiencies and additions to tax against petitioners for their tax years 1972, 1973, 1975, 1976, 1977 and 1978: Additions to tax
Tax year ended
Deficiency
Section 6651(a) [1]
December 31, 1972
$65,202.00
December 31, 1973
38,261.56
December 31, 1975
34,201.00
$958.00
December 31, 1976
9,654.94
December 31, 1977
16,353.20
December 31, 1978
7,881.64
After concessions, the sole issue for decision herein is whether consents extending the period of the statute of limitations for petitioners' tax years 1972, 1973, 1975, 1976 and 1977, [2] were executed by petitioners and by respondent's declegate prior to the running of each such period. [3] *379 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Anthony J. Cindrich (hereinafter referred to as "petitioner") and his wife, Stella Cindrich (hereinafter referred to, together with petitioner, as "petitioners") resided at R.D. #2, Avella, Pennsylvania 15312, at the time they filed their petition herein. On April 15 of 1973, 1978 and 1979, petitioners timely filed joint Federal income tax returns for their respective tax years 1972, 1977 and 1978 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Petitioners filed joint Federal income tax returns, on June 15, 1974 for 1973, on April 26, 1976 for 1975, and on June 15, 1977 for 1976, with the same service center. For the tax years in issue, petitioners claimed a distributive share of losses in some six partnerships, each of which was audited by respondent. Since respondent's audits of such partnerships had not been completed and respondent's determination of petitioners' individual income tax liability depended upon the results of *380 such audits, respondent sought to procure a number of consents to extend the three-year period of limitations which was applicable to each of the tax years in issue pursuant to section 6501(a). Between January 1976 and November 1980, petitioners and representatives of respondent executed a number of consent forms (Forms 872 and 872A) pursuant to section 6501(c)(4), purporting to extend the period of limitations under section 6501 which were applicable to the tax years here in dispute. Each such form was signed by petitioners, and was then date stamped upon receipt, signed, and with the exception of one form relating to petitioners' tax years 1972, 1973 and 1975, dated upon execution by representatives of respondent, as follows: Table 1. Consent forms
Date of IRS
Purported extension
receipt
Tax year
Form
of consent form [4]
involved
From
To
Form 872 [5]
January 22, 1976
1972
April 15, 1976
December 31, 1976
#1
Form 872
September 20, 1972
December 31, 1976
June 30, 1977
#2
1976
Form 872
September 20,
1973
June 15, 1977 [6]
December 31, 1977
#3
1976
Form 872
April 25, 1977
1972
June 30, 1977
December 31, 1977
#4
Form 872
August 18, 1977 [7]
1972
December 31, 1977
December 31, 1978
#5
August 18, 1977 [7]
1973
December 31, 1977
December 31, 1978
Form 872
August 28, 1978
1972
December 31, 1978
December 31, 1979
#6
August 28, 1978
1973
December 31, 1978
December 31, 1979
August 28, 1978
1975
April 26, 1979 [8]
December 31, 1979
Form 872A [9] *383 November 13, 1979
1972
December 31, 1979
[10]
#1
November 13, 1979
1973
December 31, 1979
November 13, 1979
1975
December 31, 1979
November 13, 1979
1976
June 15, 1980 [11]
Form 872A
November 10, 1980
1977
April 15, 1981
#2
*381 Signatures - date signed
Form
Petitioners
Respondent
Form 872 [5]
Anthony J. Cindrich
Ralph V. Fuehr/
#1
Stella Cindrich/undated
January 22, 1976
Form 872
Anthony J. Cindrich
Ralph V. Fuehr/
#2
Stella Cindrich/undated
September 23, 1976
Form 872
Anthony J. Cindrich
Ralph V. Fuehr/
#3
Stella Cindrich/undated
September 23, 1976
Form 872
Anthony J. Cindrich
Frederick A. Rupuecht/
#4
Stella Cindrich/
April 25, 1977
April 21, 1977
Form 872
Anthony J. Cindrich
Frederick A. Rupuecht/
#5
Stella Cindrich/
August 18, 1977
August 15, 1977
Anthony J. Cindrich
Frederick A. Rupuecht/
Stella Cindrich/
August 18, 1977
August 15, 1977
Form 872
Anthony J. Cindrich
Robert E. Robertson/
#6
Stella Cindrich/
undated
August 23, 1978
Anthony J. Cindrich
Robert E. Robertson/
Stella Cindrich/
undated
August 23, 1978
Anthony J. cindrich
Robert E. Robertson/
Stella Cindrich/
undated
August 23, 1978
Form 872A [9]
Anthony J. Cindrich
David W. Sobien/
#1
Stella Cindrich/
November 15, 1979
November 9, 1979
Anthony J. Cindrich
David W. Sobien/
Stella Cindrich/
November 15, 1979
November 9, 1979
Anthony J. Cindrich
David W. Sobien/
Stella Cindrich/
November 15, 1979
November 9, 1979
Anthony J. Cindrich
David W. Sobien/
Stella Cindrich/
November 15, 1979
November 9, 1979
Form 872A
Anthony J. Cindrich
John Niedurst/
#2
Stella Cindrich/
December 5, 1980
November 5, 1980
*382 On February 19, 1982, respondent mailed to petitioners a notice of deficiency for their tax *384 years 1972, 1973, 1975, 1976, 1977 and 1978. With the exception of Robert E. Robertson, who signed Form 872 #6, at the times that respondent's representatives signed the foregoing forms, they were employed by respondent in the following capacities: Table 2. Positions held by respondent's representatives
Respondent's
Form
Date
representatives
Position
872#1
January 22, 1976
Ralph V. Fuehr
Group Manager, field
branch one, group 203
872#2,
September 23, 1976
Ralph V. Fuehr
Group Manager, field
#3
branch one, group 107
872#4
April 25, 1977
Frederick A. Rupuecht
Group Manager, field audit
branch one, group 305
872#5
August 18, 1977
Frederick A. Rupuecht
Group Manager, field audit
branch one, group 305
872A#1
November 15, 1979
David W. Sobien
Reviewer, Examination
Division
Review Staff
872A#2
December 5, 1980
John Niedurst
Returns Program Manager
At the time that David W. Sobien signed Form 872A #1 on behalf of respondent, he was a Reviewer, who was, effective on October 21, 1979, paid at the level of a GS-11. During the dates listed in Table 2, the Secretary of the Treasury delegated the authority to enter into consents to extend the period of limitations to certain subordinates under Delegation Order No. 42, as revised. *385 [12] This order delegates to all of respondent's District Directors the authority to execute consents on behalf of the Secretary, and allows for redelegations of such authority to, inter alia, Reviewers of the grade GS-11 and above, Group Managers, Case Managers and Returns Programs Managers. The authority delegated by the Secretary in Delegation Order No. 42 was, in turn, redelegated by respondent's District Director in Pittsburgh, Pennsylvania through "DIR-PGH Delegation Order No. 7," as revised. Pursuant to the following four revisions of said Delegation Order No. 7, each of which superseded its predecessor, incumbents of and persons acting in the positions indicated were authorized to sign consents fixing the period of limitations upon assessment of *386 tax on behalf of the District Director (delegations which are pertinent to the consent forms in issue are emphasized): Table 3. Redelegations of authority to execute consent agreements
Effective date
Redelegations
March 11, 1971
(1) Assistant District Director
(2) Chief and Assistant Chief,
Audit Division
(3) Chief, Review Staff
(4) Chief, Conference Staff
(5) Chief, Field and Office
Audit Branches
(6) Group Supervisors, Field and
Office Audit Branches
June 16, 1978
(1) Assistant District Director
(2) Chief, Audit Division
(3) Staff Assistant to the Chief,
Audit Division
(4) Chief, Review Staff
(5) Chief, Conference Staff
(6) Chiefs, Examination Branches
(7) Group Managers, Examination
Branches
(8) Case Managers
(9) Returns Program Manager
January 22, 1979
(1) Assistant District Director
(2) Chief, Examination Division
(3) Staff Assistant to the Chief,
Examination Division
(4) Chief, Review Staff
(5) Chiefs, Examination Branches
(6) Group Managers, Examination
Branches
(7) Case Managers
(8) Returns Program Manager
October 12, 1979
(1) Assistant District Director
(2) Chief, Examination Division
(3) Staff Assistant to the Chief,
Examination Division
(4) Chief, Review Staff
(5) Reviewers, GS-11 and above
(6) Chiefs, Examination Branches
(7) Group Managers, Examination
Branches
(8) Case Managers
(9) Returns Program Manager
(10) Chief, Criminal Investigation
Division
*387 At all times here pertinent, "Group Managers" and "Group Supervisors" were different titles describing the identical position in the employ of respondent. Pursuant to the redelegations in Table 3, at the times that he signed the consent form described in Table 2, each of the signatories listed was duly authorized to sign such form on behalf of respondent. As to the six Forms 872 described in Table 1, under normal procedures in the office of respondent's Audit Division in Pittsburgh, Pennsylvania during the periods here in issue, revenue agents possessed principal authority to obtain any consents to extend the period of limitations. Pursuant to such normal procedures, when the responsible revenue agent became aware that the period of limitations would expire within a nine-month period, he provided the group secretary with the taxpayer's name and address, as well as the time to which he would like said period extended. The group secretary then prepared a Form 872, returned it to the agent for his inspection, and then mailed it, along with two copies and a cover letter, to the taxpayer. When the forms were received back bearing the signature of the taxpayer, they were date stamped *388 by respondent's agents, and then immediately placed on a Group Manager's desk, for his dated signature. Typically, within three days of receipt, the Group Manager signed and dated the form, and then returned it to the group secretary who, in turn, returned it to the revenue agent for his inspection. It would be inconsistent with normal office procedures for the Group Manager to hold a Form 872 for signature longer than five days. Finally, following his inspection, the revenue agent attached the Form 872, signed by both the taxpayer and respondent's Group Manager, to the taxpayer's return, and mailed a copy of the completed form to the taxpayer. Upon the revenue agent's completion of his review of the consent, he prepared a Notice of Statute Expiration, Form 895, indicating that a consent to extend the period of limitations had been secured. In the instant case, revenue agent David J. Katch in respondent's Pittsburgh office had principal authority to procure the six Forms 872 described in Table 1. At all times here pertinent, Katch was responsible for between 20 and 40 cases at any given time, of which no more than 20 percent might require his involvement in matters relative to *389 the period of limitations. As to Forms 872 numbered 4 and 5 on Table 1, the afore-described normal office procedures were followed in all respects. As to Forms 872 numbered 1, 2 and 3 on Table 1, the afore-described normal office procedures were followed, except that petitioners failed to date their signatures. However, revenue agent Katch inspected each of these Forms 872 within approximately one week of respondent's date stamped receipt of the signed forms from petitioners, and each consent contained the signatures of all of the parties at the time of each such inspection. As to Form 872 #6 on Table 1, which purported to extend the period of limitations applicable to petitioners' tax years 1972, 1973, 1974 and 1975, the afore-described normal office procedures were followed, except that after such form was returned to respondent bearing petitioners' dated signatures, respondent's Acting Group Manager, Robert E. Robertson, signed but failed to date the form. However, on August 30, 1978, revenue agent Katch inspected the consent form described herein as Form 872 #6, and such consent form reflected on that date the dated signatures of petitioners and the undated signature of respondent's *390 representative, Robert E. Robertson. Pursuant to normal office procedures, on August 30, 1978, revenue agent Katch executed a Form 895 indicating that the consent form described herein as Form 872 #6 had been returned to his supervisor on that date, and reflecting that the subject consent had been "secured." Unlike the other consent forms listed in Table 1, the form described as Form 872 #6, which was applicable to petitioners' tax years 1972, 1973, 1974 and 1975, was signed for respondent by Robert E. Robertson. At all times here pertinent, whenever Frederick A. Rupuecht, Group Manager for field audit branch one, group 305, was absent, his first choice to serve as Acting Group Manager was said Robert E. Robertson, who was otherwise employed as a senior field agent in the same group, and Robertson was so designated by Rupuecht on August 30, 1978. Pursuant to the redelegations under the June 16, 1978 revision of Delegation Order No. 7 in Table 3, Robert E. Robertson was duly authorized to sign the consent form described herein as Form 872#6 on behalf of respondent on August 30, 1978. [13] *391 ULTIMATE FINDING OF FACT Each consent to extend the period of limitations applicable to the tax years in issue which is described in Table 1 in our findings, was executed by petitioners and by respondent's duly authorized delegate prior to the running of such period, and was effective to extend such period in the manner therein indicated. OPINION Section 6501(a) of the Internal Revenue Code of 1954 provides, as a general rule, that: the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and *392 no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. Petitioners have the burden of proving when the return was filed, when the period of limitations expired, and that no notice of deficiency was properly sent to them within such period. United States v. Gurley,415 F.2d 144 (5th Cir. 1969); Robinson v. Commissioner,57 T.C. 735 (1972). In this case, we have found by stipulated fact that petitioners' returns for 1972, 1973, 1975, 1976, 1977 and 1978, were filed on the following dates: 1972
April 15, 1973
1973
June 15, 1974
1975
April 26, 1976
1976
June 15, 1977
1977
April 15, 1978
1978
April 15, 1979
Accordingly, the normal period of limitations applicable to the foregoing years under section 6501(a) expired on the following dates, unless an exception was applicable: 1972
April 15, 1976
1973
June 15, 1977
1975
April 26, 1979
1976
June 15, 1980
1977
April 15, 1981
1978
April 15, 1982
Finally, we have found also by stiplated fact that the notice of deficiency applicable to the foregoing years was mailed to petitioners on February 19, 1982. While the parties are in agreement that the notice of deficiency was mailed to petitioners with *393 in period of limitations applicable to their tax year 1978, petitioners maintain that the period of limitations applicable to their tax years 1972, 1973, 1975, 1976 and 1977 had run at the time of the mailing of such notice. Respondent, on the other hand, takes the position that the foregoing period of limitations had not run at the time of the mailing of the notice of deficiency because of the existance of properly executed consents extending such period. Respondent relies in this regard upon section 6501(c)(4), which provides, in pertinent part, as follows: (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. [Emphasis added.] In thus contending for applicability for the foregoing exception, respondent bears the burden of introducing into evidence consents, *394 valid on their face, that extend the period of limitations for assessment up to the date of mailing of the notice of deficiency. Robinson v. Commissioner,supra at 737; Concrete Engineering Co. v. Commissioner,19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). [14] After respondent introduces consents which are valid on their face, and petitioners assert that any such consent is ineffective, then petitioners bear the burden of proving the invalidity of such consent. CrownWillamette Paper Co. v. McLaughlin,81 F.2d 365 (9th Cir. 1936); Concrete Engineering Co. v. Commissioner,supra.[15]
Each of the consent forms described in Table 1 in our findings was introduced into evidence as a stipulated exhibit. Petitioners' position that the period of limitations applicable to their tax years 1972, 1973, 1975, 1976 and 1977 had run as of February 19, 1982, when the notice of deficiency was mailed, rests upon their contention that such consents were, in several respects, ineffective to extend such period of limitations under section 6501(c)(4). First, according to petitioners, *395 since the consent described as Form 872 #6 in Table 1 in our findings was invalid on its face for failure of respondent's agent, Robert E. Robertson, to date his signature thereon, respondent has failed to meet his burden of introducing into evidence a consent which was valid to extend the period of limitations applicable to petitioners' tax years 1972, 1973 and 1975. [16] In so stating, petitioners rely upon a Memorandum Opinion of this Court, Mantzel v. Commissioner,T.C. Memo. 1981-169, wherein we held invalid a consent which, in contravention of respondent's normal office procedures, reflected neither a date accompanying the signatures of respondent's delegate and the taxpayers, nor a date stamp indicating the date on which the consent bearing the taxpayers' signatures was received by respondent. In the instant case, unlike Mantzel, petitioners dated their signatures on the subject consent form on August 23, 1978, and, pursuant to normal office procedures, respondent date stamped the subject consent form on August 28, 1978, the date on which *396 it was received back from petitioners. As in Mantzel, however, Robert E. Robertson, respondent's Acting Group Manager, failed to date his signature on the subject consent form, and petitioners rely upon this failure in support of their claim that such consent, and the extensions of the limitation periods purportedly effectuated thereby, were invalid. As we have found, respondent's revenue agent Katch, who was principally responsible for procurement of Form 872 #6 from petitioners, inspected the subject consent form on August 30, 1978, and it reflected petitioners' dated signatures and Robertson's undated signature on that date. Furthermore, we have also found that Katch executed a Form 895 on August 30, 1978, indicating that the subject consent had been "secured" as of that date. That such consent was executed by respondent as of August 30, 1978, some two days after respondent's date stamped receipt of the consent from petitioners on August 28, 1978, was consistent with respondent's normal office procedures of signing and dating consents within three days of their receipt from the taxpayer. We believe that revenue agent Katch's foregoing testimony, corroborated by his contemporaneous *397 execution of the foregoing Form 895, was sufficient to shift to petitioners the burden of going forward with evidence to show the invalidity of the subject consent. In the absence of any evidence to show that such consent form was executed by Robertson on behalf of respondent in an untimely manner, we must sustain respondent on this point. Second, petitioners maintain that Robertson was not authorized to execute the foregoing consent form on behalf of respondent. However, on the strength of the following considerations, we have already found that Robertson was so authorized. Pursuant to section 7701(a)(II)(B) the term "Secretary" as used in section 6501(c)(4), which is excerpted supra, is defined as "the Secretary of the Treasury or his delegate." The term "delegate" is further defined as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described * * *." Section 7701(a)(12)(A)(i). As we have found, pursuant to Delegation Order No. 42, as revised, the Secretary delegated the authority to enter into consents to extend *398 the period of limitations to District Directors, see section 301.6501(c)-1(d), Proced. and Admin. Regs., and authorized redelegations of such authority to certain subordinate officials, including Group Managers. Pursuant to "DIR-PGH Delegation Order No. 7," as revised, respondent's District Director in Pittsburgh redelegated such authority, effective June 16, 1978, to incumbents of and persons acting in certain positions, including Group Manager positions. Revenue agent Katch testified herein, and we have found, that whenever Frederick A. Rupuecht, Group Manager for field audit branch one, group 305, was absent, his first choice to act in his stead was Robert E. Robertson, who was otherwise employed as a senior field agent in the same group; and that Robertson was so designated by Rupuecht on August 30, 1978. While there is no evidence herein that such designation was written, neither is it required that it be other than oral. Sanderling, Inc. v. Commissioner,66 T.C. 743, 753-755 (1976), affd. on this issue 571 F.2d 174 (3d Cir. 1978). Accordingly, as we have found, Robertson signed the subject consent as respondent's duly authorized representative. Sections 6501(c)(4), 7701(a). *399 Third, petitioners also challenge the authority of David W. Sobien on November 15, 1979 to execute on behalf of respondent, the consent described in Table 1 in our findings as Form 872A #1, relating to petitioners' tax years 1972, 1973, 1975 and 1976. [17] As we have found, however, Delegation Order No. 42, as revised, authorized redelegations of authority to execute consents extending the period of limitations to Reviewers of grade GS-11 and above. The Pittsburgh District Director's Delegation Order No. 7, as revised on October 12, 1979, in turn, redelegated such authority to Reviewers of grade GS-11 and above. Since was have also found that on November 15, 1979, David W. Sobien was employed by respondent as a Reviewer at grade GS-11, he was clearly authorized to sign the subject consent as respondent's representative on the date. Sections 6501(c)(4), 7701(a); cf. Bridges v. Commissioner,T.C. Memo. 1983-763. Fourth, petitioners maintain that since Ralph V. Fuehr and Frederick A. Rupuecht were employed as Group Managers for respondent between *400 January 1976 and August 1977, when they executed the consents described herein as Forms 872 numbered 1, 2, 3, 4, and 5, and since authority to execute consents was redelegated by the Pittsburgh District Director under "DIR-PGH Delegation Order No. 7," as revised on March 11, 1971, to Group Supervisors rather than Group Managers, Fuehr and Rupuecht were without authority to execute such consents for respondent. On the strength of unrefuted testimony by revenue agent Katch, however, we have already found that at all times here pertinent "Group Manager" and "Group Supervisor" were different titles describing the identical position. Fifth, citing respondent's Revenue Procedure 79-22, 1979-1 C.B. 563 for the proposition that it was respondent's practice to secure consents "only in unusual circumstances, to keep to a minimum the number of consents obtained from taxpayers," and "that the period of any extension obtained shall be limited to the minimum time required for consideration and processing of such cases," petitioners maintain that respondent procured the consents in issue, in contravention of his own policies, in an unreasonable manner. Specifically, according to petitioners, *401 respondent was unreasonable in the following respects: (1) Petitioners received no benefit from their execution of the subject consents; (2) respondent's alleged advice to petitioners that their failure to execute certain consents would be cause for immediate assessment, constituted unreasonable coercion; and (3) the Forms 872A executed by petitioners could extend the period of limitations only for a reasonable period, and respondent's issuance of the notice of deficiency here in issue, unreasonably occurred some six years after respondent possessed all of the information required to issue such notice. Petitioners' first point above -- that they received no benefit from executing the waivers in question -- appears to be an argument based upon an alleged lack of consideration, and implying that the waivers here are to be tested as contracts. This argument was answered, adversely to petitioners, many years ago. Stern Brothers & Co. v. Burnet,51 F.2d 1042 (8th Cir. 1931). As to petitioners' third point above, in addition to the language to which petitioners direct our attention, Revenue Procedure 79-22, which applies solely to special consents reflected on Forms 872A, also provides, *402 in pertinent part, that "[i]t is often necessary to request extensions of the period of limitation in tax cases to provide adequate time for consideration of disputed issues," and that "[i]t is often difficult * * * to forecast the time required for adequate consideration of a case, particularly where complex or intricate questions of fact or doubtful issues of law are present." In the instant case, petitioners had claimed interests in some six partnerships, each of which was under examination by respondent. At trial, revenue agent Katch explained the reason why his office attempted to procure the subject consents, as follows: Q. * * * Why did your office solicit these consents? A. Well, in * * * this particular case there were approximately six partnerships, both in the Pittsburgh District and out of the Pittsburgh District that were under examination. And the results of * * * these examinations were not in. Q. And what bearing would they have on this particular case? A. The Cindrichs' had claimed a distributor [sic] share of these partnership losses. And until the partnership examination had been completed, the specific amounts of adjustment that would affect the Cindrichs' *403 returns would be unknown. Q. At that time that you procured these consents, were the results of these partnership audits in? A. No, they were not. Finally, as to petitioners' allegations of coercion, petitioner's wife testified herein as follows: Q. Mrs. Cindrich, were you compelled or coerced in any manner to sign any consents presented to you? a. Well, every consent we had said, if we don't sign, you can be billed immediately for taxes without giving you time to look them over. Q. Were any threats made to you? * * * A. Only by what was written on the consents. On this same issue, revenue agent Katch testified as follows: Q. Mr. Katch, did you make any threats to the taxpayers, in the event that they did not return * * * any of these consents? A. No. Q. Did you make any promises to them? A. No. Q. Did you tell them that the * * * tax returns that were under investigation * * * would create an immediate assessment and collection proceeding for the tax in question? A. No. Q. Did you make any reference whatsoever to immediate assessment of tax in the event those consents were not returned signed? A. No. On this record, we are persuaded neither that respondent *404 acted unreasonably with respect to the subject consents, [18] nor that respondent acted in contravention of the practices or policies expressed in the foregoing Revenue Procedure. [19]
In light of the foregoing, [20] *405 respondent's issuance of the notice of deficiency here in issue was timely and assessment of the deficiencies and additions to tax herein was not barred by the statute of limitations. All other issues having been resolved by stipulated agreement of the parties, [20]
Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated. ↩
2. Petitioners concede that there is jurisdiction herein as to their tax year 1978. ↩
3. All other issues herein have been resolved by stipulated agreement of the parties.
4. These entries indicate the date that each consent form was received from petitioners and date stamped at the Internal Revenue Service office in Pittsburgh, Pennsylvania. ↩
5. Form 872 is entitled "Consent Fixing Period of Limitation Upon Assessment of Tax." The numbers following each form are added for purposes of identifying such form herein. ↩
6. Since we have found, by stipulated fact, that petitioners' tax return for 1973 was filed on June 15, 1974, we reject in favor of the date shown, the apparent suggestion in the stipulation of the parties herein that, but for the subject consent, the period of limitations for 1973 would have expired on April 15, 1977. Sec. 6501(a)↩. 7. Forms 872 numbered 5 and 6 and Form 872A #1 also purport to extend the period of limitations applicable to petitioners' tax year 1974, but that year is not in issue herein. ↩
8. Since we have found, by stipulated fact, that petitioners' tax return for 1975 was filed on April 26, 1976, we reject in favor of the date shown, the further stipulation of the parties herein that, but for the subject consent, the period of limitations for 1975 would have expired on June 15, 1979. Sec. 6501(a)↩. 9. Form 872A, entitled "Consent Fixing Period of Limitation Upon Assessment of Tax," is also known as a "special consent." 10. Form 872A extends the period of limitations to a date 90 days after: (1) Mailing by the Internal Revenue Service of written notification to the taxpayer of termination of its consideration; (2) receipt by the Internal Revenue Service office considering the case of written notification from the taxpayer of election to terminate the agreement; or (3) mailing by the Internal Revenue Service of a notice of deficiency; except that, in the event such notice of deficiency is sent to the taxpayer, the time for making an addessment for the periods stated in such notice will expire 60 days after the period during which the making of an assessment is prohibited. See Revenue Procedure 79-22, 1979-1 C.B. 563↩. 11. Since we have found, by stiplated fact, that petitioners' tax return for 1976 was filed on June 15, 1977, we reject in favor of the date shown, the further stipulation of the parties herein that, but for subject consent, the period of limitations for 1976 would have expired on April 15, 1980. Sec. 6501(a)↩.
12. Revisions for the periods here involved are set forth at 1975-1 C.B. 635 (Rev. 6) (effective January 13, 1975); 1977-1 C.B. 527 (Rev. 7) (effective March 14, 1977); 1978-2 C.B. 469 (Rev. 8, 9, 10) (effective, respectively, June 8, 1978, July 2, 1978, and October 1, 1978); 1979-1 C.B. 474 (Rev. 11) (effective January 29, 1979); 1979-2 C.B. 482 (Rev. 12) (effective May 24, 1979); 1980-1 C.B. 571↩ (Rev. 13) (effective December 4, 1979).
13. In making this finding, we are mindful that while Rupuecht authorized Robertson to act in his stead as Acting Group Manager for field audit branch one, group 305, on August 30, 1978, the June 16, 1978 Delegation Order delegates the authority to execute consent orders to Group Managers solely of "Examination Branches." Since the consent order signed by Robertson reflects the code "EX: F: 1305: DJK," and in light of testimony herein that such code meant "examination; field; field audit branch one; group 305; David J. Katch," we find that the Acting Group Manager position, to which Robertson was appointed, was within the intendment of the subject Delegation Order.
14. See also Lefebvre v. Commissioner,T.C. Memo. 1984-202↩. 15. See also Rault v. Commissioner,T.C. Memo. 1982-283↩.
16. Form 872 #6 also purported to extend the period of limitations applicable to petitioners' tax year 1974, but that year is not in issue here.↩
17. Form 872A #1 also purported to extend the period of limitations applicable to petitioners' tax year 1974, but that year is not in issue here.↩
18. As to petitioners' allegations of duress, see Stuckey v. Commissioner,T.C. Memo. 1982-537; compare Robertson v. Commissioner,T.C. Memo. 1973-205↩. 19. Even if the contrary were true, such procedural rules are merely directory and not mandatory, and would not necessarily invalidate respondent's actions. See Bridges v. Commissioner,T.C. Memo. 1983-763↩.
20. As conceded by petitioners, we note that sec. 6229(b), which relates to the application of consent agreements under sec. 6501(c)(4) to the period of limitations for assessment of any tax which is attributable to partnership items, was added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and is not applicable to any of the periods here in issue.